## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

John H. Page                                                    )
1077 30th Street NW                                             )
Apt. 411                                                        `
Washington, D.C. 20007
Tel: 202 352 6952                              Case: 1:20−cv−00104
                                               Assigned To : Cooper, Christopher R.
Plaintiff                                      Assign. Date : 1/15/2020
                                               Description: PRO SE GEN CIV (F−DECK)
v.                                                             ʼ
                                                               )
   Donald J. Trump, in His Official                            )
   Capacity as President of the United                         )
   States, Office of the President                             )
   1600 Pennsylvania Avenue, N.W.                              )
   Washington, D.C. 20500,                                     )
                                                               )
                                                               )
                                                               )
                                                               )
   Defendant                                                   )
                                                               )

## COMPLAINT

TABLE OF CONTENTS

I.    NATURE OF THIS ACTION ................................................................. 1

II.   JURISDICTION AND VENUE ............................................................. 2

III.  PARTIES ............................................................................................. 3

A.  Plaintiff ........................................................................................... 3

B.  Defendant ........................................................................................ 3

IV.   FACTS RELEVANT TO THE CLAIMS ............................................. 4

C.  Where do Columbia's rights to participation in the Congressional franchise come from and can Congress exercise them? ................................................................................................ 4

D.  Is there any law that denies participation in the Congressional franchise from either a) any State of the Union or b) from the people of Columbia through their State? ............................................. 4

E.  Is the District of Columbia or the State of Maryland a state for the purposes of Columbia's participation in the Congressional franchise? .................................................................................. 5

F.  Did partitioning of Columbia from Maryland satisfy U.S. CONST Art IV? ............................... 5

G.  Do Columbia's laws provide for participation in the Congressional franchise? ............................... 6

H.  Does the State of Columbia have standing? ........................................................................... 7

I.  Does Columbia pose a threat to Congress' power over the District? ............................................. 8

J.  Do the people of Columbia want voting participation in Congress? ............................................. 9

K.  Does the wording of the Adams v Clinton opinion contradict the claims made in this complaint? .. 9

L.  Are State's rights protected against Congressional overreach? ................................................... 11

M.  Has District of Columbia Law repealed State of Columbia Law? ............................................. 11

N.  Main Question ........................................................................................................... 12

V.    HARM ................................................................................................. 13

i

VI.   CAUSES OF ACTION................................................................................................... 13

O.    COUNT I - Violations of Art I and 10th Amendment...................................................... 13

P.    COUNT II - Equal Footing Violations ......................................................................... 14


VII.  PRAYER FOR RELIEF .......................................................................................... 14

VIII. JURY DEMAND .................................................................................................. 15

## I.   NATURE OF THIS ACTION

1.     Plaintiff presents the following question: Defendant and Congress have assented to Columbia's non-District law which explicitly allows the election of a State legislature and representatives to Congress.   Does Defendant have any grounds for omitting Columbia, a State of the Union, from the census for the purposes of apportioning participation in the Congressional franchise?

2.     Plaintiff's proof relies only upon the U.S. Constitution, an Act of Congress affirming sovereign law in Columbia and decisions either decided or affirmed by the U.S. Supreme Court.

3.     Columbia was guaranteed Article 1 apportioned representation when it joined the Union as part of Maryland in 1788 and that guarantee survived Columbia's partition from Maryland.  Defendant assented to section 1 of the 1801 Organic Act and Columbia never left the Union so, unlike voluntary partitions, no specific act of readmission was required to satisfy U.S. CONST. Art IV.  Art IV provides Columbia an equal footing and its population size has qualified it for apportionment since the 1860 census.

4.     In Columbia, as everywhere else in the Union, all sovereign laws are under State jurisdiction except where powers are enumerated to Congress.  This court has previously found, and the U.S. Supreme Court affirmed[2], Columbia's U.S. CONST. Art I rights to participation in the Congressional franchise were not enumerated to Congress under U.S. CONST. art. I, § 8, cl. 17 ("the District Clause").  Clearly, the State of Columbia cannot interfere with the Congress' enumerated

1

powers in the District of Columbia; to hold otherwise would go against the District Clause and the framers' intent for the security of the Seat of the United States Government to rest with Congress.

5.      Columbia's right to a) elect a State legislature and b) members of Congress was preserved in Columbia's law which was assented to by Congress and Defendant in section 1 of Congress' 1801 Organic Act.  Plaintiff asserts, therefore, the nature of this complaint is not a political question but one of the Defendant failing to faithfully follow the law as to the U.S. CONST. Art I, §2 census returns thereby depriving Plaintiff of Art I representation.

6.      **Urgency.**   Current incumbent of Defendant's office is undergoing impeachment which entails trial at which the U.S. Senators are the jury.  Clearly the State of Columbia would not be bound by a decision from which it had been unlawfully excluded by Defendant.   Expedited hearing of this case is therefore requested pursuant to FRCP Rule 16(a)(1).

7.      **Discovery Waived.**  Only facts of law and precedent are involved here. Plaintiff therefore waives his right to discovery.  Plaintiff can meet immediately to support creation of Defendant's discovery plan under FRCP Rule 26(f).

8.      **Pre-Trial Conference.**  Plaintiff is ready to meet immediately to prepare for a Pre-Trial Conference as contemplated in FRCP Rule 16.

## II.      JURISDICTION AND VENUE

9.      This court has jurisdiction over disputes between individuals and the Federal Government of the United States, of which the Office of President is part.

10.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, 28 § U.S.C. 1346(a), and 5 U.S.C. §§ 701–706, because Plaintiffs' claims arise under the United States Constitution.

11.    Venue is proper in this District under 28 U.S.C. §§ 1391 (b)(1)–(2), (e), because Plaintiff and Defendant both reside in Columbia and because the events giving cause of action substantially occurred here.

### III.    PARTIES

**A.   Plaintiff**

12.    John H. Page is a permanent resident of the United States, a 20-plus year taxpayer of Columbia residing in Ward 2 and is countable under the U.S. CONST. Art I, §2 census.  Plaintiff is not an attorney-at-law, he works with technology companies and has been allowed four patents by the USPTO.

**B.   Defendant**

13.    All occupiers of the Office of the President of the United States, the current being Donald J. Trump, are or were sworn to faithfully follow the law under U.S. CONST. Art I, §3 and are with charged with transmitting to Congress the results of each decennial census of the population of the United States, thus triggering apportionment of the number of U.S. Senators and Representatives in the Congress.  Defendant maintains his office at, and conducts his official duties from, The White House in Washington, D.C. and has never included the State of Columbia in such census results.

## IV.   FACTS RELEVANT TO THE CLAIMS

14.    Plaintiff couches the facts and his arguments in the form of questions and answers below.

**C.   Where do Columbia's rights to participation in the Congressional franchise come from and can Congress exercise them?**

15.    They are stated in the U.S. Constitution[1] and Congress cannot exercise them; affirmed by this court in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)[2].

**D.   Is there any law that denies participation in the Congressional franchise from either a) any State of the Union or b) from the people of Columbia through their State?**

16.    The answer is No; States' rights are protected by the 10th Amendment[3]

---

[1] U.S. CONST. art. I, § 2, cl. 3. (as amended):
   "Representatives and direct taxes shall be apportioned among the several states which may be included within this union, according to their respective numbers, which shall be determined by adding to the whole number of free persons, including those bound to service for a term of years, and excluding Indians not taxed, three fifths of all other Persons."

[2] Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) affirmed per curiam. (emphasis added):
   "As originally provided under Article I, section 3, the Senate was to be "composed of two Senators from each State," chosen not "by the People of the several States," as in the case of the House, but rather "*by the Legislature thereof.*" U.S. CONST. art. I, ₰ 3, cl. 1 (emphasis added). **The impossibility of treating Congress as the legislature under that clause is manifest**, as doing so would mean that Congress would itself choose the District's senators. The scenario is further complicated by the fact that clause 2 of the same section provides that Senate vacancies will be filled not just by the state's "Executive," as with the House, but also by the state's "Legislature" when not in recess. *Id.* art. I, ₰ 3, cl. 2. Since, as noted above, Congress is ultimately both the Legislature and Executive for the District, plaintiffs' theory would mean that Congress would fill vacancies in the District's Senate seats" except when Congress is in recess, in which event Congress would also fill the vacancies"

**E.    Is the District of Columbia or the State of Maryland a state for the purposes of Columbia's participation in the Congressional franchise?**

17.    No, this answer has already been affirmed in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)[4].   The opinion in that case only considers the Adams Plaintiffs' theories of representation through the District of Columbia or the State of Maryland.  The opinion in Adams did not consider any theory of participation under the State laws of Columbia assented to by Defendant.

**F.    Did partitioning of Columbia from Maryland satisfy U.S. CONST Art IV?**

18.    Yes.  Columbia was partitioned from the State of Maryland with the U.S. Const. Art IV[5] consent of Congress and of Maryland with the same sovereign State laws of the State of Maryland as they were then[6].  Unlike other partitions, in which the partitioned territory left the United States and was readmitted under a separate

---

[3] U.S. CONST. 10th Amendment:
"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"
[4] Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) affirmed per curiam at page 16:
"In sum, we conclude that constitutional text, history, and judicial precedent bar us from accepting plaintiffs' contention that the District of Columbia may be considered a state for purposes of congressional representation under Article I.";
[5] U.S. Const. Art IV, S3 Cl. 1:
"New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States, or Parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress."
[6] An Act Concerning the District of Columbia, 2 Stat. 103 (1801) (the "1801 Organic Act") at section 1:
"..the laws of the state of Maryland, as they now exist, shall be and continue in force in that part of the said district, which was ceded by that state to the United States, and by them accepted as aforesaid."

admission act, Columbia never left the Union[7] and meets all the relevant Art IV criteria.

### G.    Do Columbia's laws provide for participation in the Congressional franchise?

19.    Yes, State Law in Columbia was assented to by Defendant to the extent not succeeded by Congress' lawful exercise of its powers in the District of Columbia or succeeded by Federal legislation affecting all States.  Columbia's State law by sovereign convention is stated in "A Declaration of Rights, and the Constitution and Form of Government agreed to by the Delegates of Maryland, in Free and Full Convention Assembled November 11, 1776" (the "Columbia Constitution").

20.    Under Minor v. Happersett[8], Defendant must adhere to Columbia State law to the extent it is not modified or superseded under Federal Law.

21.    Columbia's Constitution, which is in full force and effect regarding rights not delegated to Congress under the District Clause, was fully consented to by the United States Government in 1801 and explicitly provides for:

a.  A state legislature at section 1:

"THAT the Legislature consist of two distinct branches, a Senate and House of Delegates, which shall be styled, The General Assembly"

b.  Election of congressional representatives at section 27:

---

[7] O'Donoghue v. United States, 289 U.S. 516 (1933)
    "It is important to bear in mind that the District was made up of portions of two of the original states, and was not taken out of the Union by the cession."
[8] In Minor v. Happersett, 88 U.S. (21 Wall.) 162 (1875) the Supreme Court decided that, absent a Federal law to the contrary, State law must be applied.

"XXVII. That the Delegates to Congress, from this State, shall be chosen annually, or superseded in the mean time by the joint ballot of both Houses of Assembly;…".

**H.   Does the State of Columbia have standing?**

22.   Yes, the Union is indissoluble unilaterally as the Supreme Court has already found in Texas v. White, 74 U.S. 700 (1868)[9].  Columbia's Art I rights to participation in the Congressional franchise, subject to apportionment, cannot have been annulled because a) the people are sovereign and b) the Union has not been dissolved.  Given those rights exist there must be a vessel for them to be exercised through and that vessel must, by definition, be a State.

23.   The Supreme Court affirmed this court's Adams v Clinton decision that Columbia's participation rights do not run through the District of Columbia because the U.S. Constitution says they must run through its State.  A State is a sovereign jurisdiction controlled by its people, not by Congress.

24.   When Columbia was partitioned from Maryland the 1801 Organic Act explicitly provided, and Defendant assented to, that sovereign law of the State of Maryland became the sovereign law in Columbia.  Defendant must obey U.S.

---

[9] Texas v. White, 74 U.S. 700 (1868)

"4. But the perpetuity and indissolubility of the Union by no means implies the loss of distinct and individual existence, or of the right of self-government by the States. On the contrary, it may be not unreasonably said that the preservation of the States and the maintenance of their governments are as much within the design and care of the Constitution as the preservation of the Union and the maintenance of the National government. The Constitution, in all its provisions, looks to an indestructible Union composed of indestructible States."

CONST. Art II §3 and ensure the law is faithfully followed including, as shown in the answer to Question G above, Columbia's sovereign law that explicitly states the right to choose a State legislature and members of Congress.

25.    To pretend these State of Columbia rights to participation in Congress do not exist would be to dissolve the Union contrary to a) O'Donoghue v. United States and b) White v Texas.  Representation is guaranteed to States and this court affirmed they were not delegated to Congress under the District clause.  For this court to find the State of Columbia has no standing would be to unconstitutionally frustrate its sovereign rights to participation by denying the very recourse provided for by Defendant's assent to section 1 of the 1801 Organic Act.

I.    Does Columbia pose a threat to Congress' power over the District?

26.    No.  This court has already taken into consideration the history and intent of the District clause in making the Adams v Clinton decision[4].  The State of Columbia only has the rights and powers not enumerated to Congress under the District Clause U.S. Const. art. I, § 8, cl. 17[10].

27.    Congress has exclusive District-level powers over any matter whatsoever, so there is not conflict.  Because, per Adams v Clinton, participation in the Congressional franchise does not run through the clause 17 District, further debate is moot.

---

[10] U.S. CONST. art. I, § 8, cl. 17:
"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States.."

**J.     Do the people of Columbia want voting participation in Congress?**

28.     Yes.  A referendum held by the District of Columbia Board of Elections ("DCBOE") on November 16, 2016 showed 86% of the valid votes approved of creating a state of "New Columbia".

**K.     Does the wording of the Adams v Clinton opinion contradict the claims made in this complaint?**

29.     No; the Adams opinion explicitly confines itself to the Adams Plaintiffs' two theories i) District as State and ii) residual citizenship of Maryland[11].   The Adams opinion does not mention or reference Columbia's Constitution.   The wording of the Adams opinion should be understood in the context of the legal theories it is responding to, for example where the opinion states:

     **a.**   "*District residents did not lose state citizenship until December, 1800*" a fuller wording to include consideration of Columbia's state jurisdiction would perhaps be "**Columbia residents did not lose citizenship of the states that ceded the land comprising the District until December, 1800**"

---

[11] Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)
    "Instead, they [Plaintiffs] contend that District residents can fairly be characterized as citizens of a "state," as the term was intended in Article I, under either of two theories. First, they argue that the District of Columbia itself may be treated as a state through which its citizens may vote. Second, they contend that District citizens may vote in congressional elections through the State of Maryland, based on their "residual" citizenship in that state"

    **b.** "*Rather, exclusion was the consequence of the completion of the cession transaction which transformed the territory from being part of a state, whose residents were entitled to vote under Article I, to being part of the seat of government, whose residents were not.*" Here, the seat of government the opinion is referring to is the clause 17 District so the expanded meaning is "..**whose residents were not entitled to participation in the Congressional franchise through the Clause 17 District**."

    **c.** "*..it is the Constitution itself that is the source of plaintiffs' voting disability..*" Clearly, had the Adams court considered the fact that State law was required to be continued by both i) Maryland's grant of cession of Columbia and ii) section 1 of the 1801 Organic Act, and iii) Congress has no enumerated power to strip Art 1 representation rights from any part of the Union; the Adams opinion would have found in favor of the theory presented here otherwise the 1801 Organic Act itself would be rendered unconstitutional.  Plaintiff, therefore, suggests to simply add "**through the District**" to provide the opinion's context.

30.    In sum, in Adams v Clinton the court did not opine on non-District (non-clause 17) state law in Columbia which was not a theory put before it.  Nowhere did the Adams v Clinton court consider any theory for or against Columbia having extant rights to elect a state legislature and representatives to Congress which rights are

enshrined in written laws which Defendant assented to. Hence, it cannot be said a priori that Plaintiff's arguments are rebutted by any part of the Adams opinion.

**L.   Are State's rights protected against Congressional overreach?**

31.    The 10th Amendment was in full force and effect before the partitioning of Columbia from Maryland and the subsequent cession of the District to Congress' control. Hence, the failure of Defendant to submit an accurate census list including the State of Columbia is a failure to obey the U.S. Constitution and consequentially deny exercise of non-District Clause powers reserved to the State of Columbia. Defendant has thus frustrated Columbia's constitutionally protected rights of participation in the Congressional franchise and injured Plaintiff's right to be counted for apportionment of voting representatives in Congress based on said census results.

**M.   Has District of Columbia Law repealed State of Columbia Law?**

32.    Plaintiff is familiar with the belief that that Congress repealed all old Maryland laws and, while a) the opinion in Adams v Clinton has determined that choosing Columbia's representatives to Congress  is not within Congress' District powers and b) Congress may not interfere affairs reserved to the State; such  a statement is worthy of this court's attention.

33.    In 1901 Congress, using its District Clause powers, passed an Act creating a new municipal code for the District of Columbia. By Congress' own

words[12], that Act, did not repeal the ex-Maryland 1776 State Bill of Rights or Constitution because they are sovereign law decided by a state constitutional convention and not acts of a "*general assembly*"; indeed, that state constitutional convention stated the will of the people to be independent of Great Britain and become part of the independent states – full repeal would have excluded Columbia from the Union, which it did not. There is no contradiction to be found in District law; Plaintiff is only claiming State of Columbia's Constitution is in full force and effect to the extent it has not been succeeded by the U.S. Constitution or valid acts of Congress affecting all States or the District of Columbia in particular.

### N.   Main Question

34.   This is: "*Does Defendant have any grounds for not adding Columbia to the census as a State of the Union for the purposes of apportioning participation in the Congressional franchise?*" While Defendant may have a political purpose for withholding Congressional representation from Columbia's, this case does not pose a political question. Nowhere does any law provide that Columbia is not a State and, to maintain constitutionality, Congress and Defendant preserved Sovereign law in Columbia[13]. The issue before the court is solely relief to prevent Defendant from

---

[12] An Act to establish a code of law for the District of Columbia, 1901, Sec. 1636:
    "All acts and parts of acts of the general assembly of the State of Maryland... are hereby repealed

[13] Perry v. United States, 294 U.S. 330 (1935): "8. The sovereignty of the United States resides in the people, and Congress cannot invoke the sovereignty of the people to override their will as declared in the Constitution. P. 294 U. S. 353."

continuing to inflict injury in fact on Plaintiff by disobeying non-District law that Defendant has already assented to.

## V.    HARM

35.    Plaintiff is injured by Columbia's lack of apportioned representation under U.S. CONST. art. I, § 2, cl. 3. (as amended).  Plaintiff's claim to "injury in fact" has the same basis as was found to exist in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) which can be concluded by substituting "Columbia" for "the District" in the Adams opinion below:

> "Hence, if the residents of the District are entitled to such a voice, which we must presume for purposes of standing analysis, its denial plainly constitutes an "injury in fact." *See Department of Commerce v. United States House of Representatives,* 525 U.S. 316, 119 S. Ct. 765, 774, 142 L. Ed. 2d 797 (1999) (holding that resident's "expected loss of a Representative to the United States Congress" through reapportionment "undoubtedly satisfies the injury-in-fact requirement of Article III standing"); *Michel v. Anderson,* 14 F.3d 623, 626 (D.C.Cir.1994) (noting that "[i]t is obvious that Georgia voters would have suffered an injury" if "the House were to prevent all congressmen from the State of Georgia from voting in the House")."

## VI.    CAUSES OF ACTION

### O.   COUNT I - Violations of Art I and 10th Amendment

36.    Defendant assented to Columbia State law but has failed follow the provisions of U.S. CONST. Art I as to participation in the Congressional franchise

as a fundamental right reserved only to States and protected by the U.S. CONST. 10th Amendment.  As a result of Defendant's failure to follow the law, Plaintiff is not counted as the resident of a State and consequentially has no apportioned voting representatives in Congress.

**P.   COUNT II - Equal Footing Violations**

37.   Defendant has assented to Columbia State law and knows that all States within the Union must be treated equally and must treat each other equally. Defendant is a sworn representative of all States including Columbia.  To omit the "State of Columbia" from the census returns is to deny its people, including Plaintiff, equal protections.  The only difference between the State of Columbia and other States is that Congress has exclusive legislative control of the District of Columbia through the enumerated delegation of power in the District Clause.

38.   Per this court and the Supreme Court's affirmation of Adams v. Clinton, the powers delegated to Congress do **not** include the choosing of representatives to Congress[2] thus they remain undelegated powers of the State of Columbia.  As a result of Defendant's failure to follow the law, Plaintiff is not counted as the resident of a State and consequentially has no apportioned voting representatives in Congress.

## VII.   PRAYER FOR RELIEF

39.   The remedy sought is an order of the court requiring the occupier of the Office of President to immediately correct all census returns to show the State of

Columbia thereby bringing the Office of the President into compliance with the Acts of Congress already passed into law.

40.    The order should require immediate transmittal of those amended census returns to Congress.

## VIII.   JURY DEMAND

41.    Plaintiff does not demand a jury trial.

January 14, 2019
Respectfully submitted,

John H. Page (pro se)

1077 30th Street NW, Apt 411
Washington, D.C. 20007
Telephone: 202-352 6952
*john.h.page@gmail.com*