# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHN H. PAGE,

         *Plaintiff*,

         v.

DONALD J. TRUMP, in his official capacity as President of the United States,

         *Defendant*.

Civil Action No.: 20-0104 (CRC)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

TIMOTHY J. SHEA
D.C. Bar #437437
United States Attorney

DANIEL F. VAN HORN
D.C. BAR #924092
Chief, Civil Division

BRIAN J. FIELD
D.C. BAR #985577
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov

May 8, 2020

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

STANDARDS OF REVIEW.............................................................................................4

ARGUMENT.....................................................................................................................6

I.   There Is No Cause Of Action Against The President And Plaintiff Cannot Obtain Equitable Relief Against The President ..................................................................................6

II.  Plaintiff Cannot State A Claim For Relief .............................................................7

    A.   The Constitution Provides that the District is not a State...........................7

    B.   If Plaintiff Were Correct, the Constitution Would Be Unconstitutional..................10

III. Plaintiff's Reliance On The Equal Protection Clause Is Doomed .......................12

IV.  Plaintiff Lacks Standing ......................................................................................13

V.   Plaintiff Presents A Nonjusticiable Political Question .......................................14

VI.  Plaintiff's Desired Relief Would Require Congressional Action ........................15

CONCLUSION................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Abhe & Svoboda, Inc. v. Chao*,
    508 F.3d 1052 (D.C. Cir. 2007) .................................................................................5

*Abou-Hussein v. Mabus*,
    953 F. Supp. 2d 251 (D.D.C. 2013) ...........................................................................5

*Adams v. Clinton*,
    531 U.S. 941 (2000) ...................................................................................................3

*Adams v. Clinton*,
    90 F. Supp. 2d 27 (D.D.C. 2000) ...............................................................................4

*Adams v. Clinton*,
    90 F. Supp. 2d 35 (D.D.C. 2000) ....................................... 2, 3, 4, 8, 9, 10, 11, 12, 14

*Am. Nat'l Inc. Co. v. FDIC*,
    642 F.3d 1137 (D.C. Cir. 2011) .................................................................................5

*Armstrong v. Exceptional Child Ctr.*,
    135 S.Ct. 1378 (2015) ................................................................................................6

*Atherton v. District of Columbia Office of Mayor*,
    567 F.3d 672 (D.C. Cir. 2009)..................................................................................15

*Baker v. Carr*,
    369 U.S. 186 (1962) ............................................................................................13, 14

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*,
   512 U.S. 687 (1994) ..................................................................................................16

*Castañon v. United States*,
   No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020) ........................... 4, 8, 12, 13, 14

*Common Cause v. Biden*,
   748 F.3d 1280 (D.C. Cir. 2014) .................................................................................13

*Dalton v. Specter*, 511 U.S. 462 (1994) .........................................................................6

*District of Columbia v. Carter*,
   409 U.S. 418 (1973) ..................................................................................................2

*District of Columbia v. Murphy*,
   314 U.S. 441 (1941) ..................................................................................................2

*Downes v. Bidwell*,
   182 U.S. 244 (1901) ................................................................................................14

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975) ................................................................................................15

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ..............................................................................................6, 7

*Gravel v. United States*,
   408 U.S. 606 (1972) ...........................................................................................15, 16

*Grupo Mexicano De Desarrollo v. All. Bond Fund*,
   527 U.S. 308 (1999) ..................................................................................................6

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) ....................................................................................5

*Hearst v. Black*,
   87 F.2d 68 (D.C. Cir. 1936) ......................................................................................16

*Hollingsworth v. Duff*,
   444 F. Supp. 2d 61 (D.D.C. 2006) ...............................................................................5

*Igartúa de la Rosa v. United States*,
   842 F. Supp. 607 (D.P.R. 1994) ................................................................................14

*Jerome Stevens Pharm., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ...................................................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................13

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1866) .......................................................................................6

*Newdow v. U.S. Congress*,
   328 F.3d 466 (9th Cir. 2003) .....................................................................................16

ii

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ...................................................................................6

*O'Donoghue v. United States*,
  289 U.S. 516 (1933) ...................................................................................2

*Papason v. Allain*,
  478 U.S. 265 (1986) ...................................................................................5

*Pauling v. Eastland*,
  288 F.2d 126 (D.C. Cir. 1960) ..................................................................16

*Phillips v. Payne*,
  92 U.S. 130 (1875) ...................................................................................14

*Raines v. Byrd*,
  521 U.S. 811 (1997) ...................................................................................13

*Regan v. Spicer HB, LLC*,
  134 F. Supp. 3d 21 (D.D.C. 2015) ..............................................................5

*Spokeo v. Robins*,
  __ U.S. ___, 136 S.Ct. 1540 (2016) ..........................................................13

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ....................................................................7

*Trinsey v. United States*,
  No. 00-cv-5700, 2000 WL 1871697 (E.D. Pa. Dec. 21, 2000) ...............11

*United States v. Johnson*,
  383 U.S. 169 (1966) ...................................................................................15

*United States v. Thompson*,
  452 F.2d 1333 (D.C. Cir. 1971) ..................................................................4

*U.S. Term Limits, Inc. v. Thornton*,
  514 U.S. 779 (1995) ...................................................................................11

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000) ...................................................................................13

**Other Authorities**

12 Annals of Cong. 487 (1803) ...........................................................................3

An Act for Establishing the Temporary and Permanent Seat of the
  Government of the United States, 1 Stat. 130 (1790) ............................2

U.S. Const., art. I, § 2 ....................................................................................2, 8

U.S. Const., art. I, § 3 .......................................................................................11

U.S. Const., art. I, § 6 .......................................................................................15

U.S. Const., art. I, § 8 ....................................................................................1, 8

U.S. Const., art. II, § 1 ...................................................................................9, 11

iii

**Rules**

Federal Rule of Civil Procedure 12(b)(1)..................................................................4, 5

Federal Rule of Civil Procedure 12(b)(6)..................................................................5

Plaintiff resides in the District of Columbia and claims that his constitutional rights are violated by the lack of participation in the congressional franchise. *See, e.g.*, Compl. ¶ 15.  This is not a unique claim—it has been raised (and rejected) multiple times in this Circuit.  Typically, plaintiffs claim that elected officials have violated their constitutional rights by not taking steps to afford District residents the ability to vote in congressional elections.  In this case, Plaintiff takes a unique, albeit untenable, tack.  According to Plaintiff, the District is already a state (the 51st state called the "State of Columbia) and thus there is nothing standing between District residents and the congressional franchise.  This would likely come as a surprise to the District residents and political leaders who have taken many steps to obtain statehood for the District.

In all events, Plaintiff's theory runs contrary to the text of the Constitution, the words of the Framers, and the actions of District political leaders in the years since.  Whatever one calls the District of Columbia, it is clear that the Constitution does not afford its residents the same voting privileges as residents of states.  Indeed, several courts have reached precisely this conclusion and dismissed claims similar to those Plaintiff advances.

## BACKGROUND

### A.      The District's Status

Upon ratification, the Constitution provided for the establishment of a permanent federal capital—separate and apart from any state.  *See* U.S. Const., art. I, § 8, cl. 17 (granting Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States").  In 1788 and 1789, Maryland and Virginia enacted legislation to cede territory for the creation of such a federal capital. Congress accepted the cessions from Maryland and Virginia, and provided that the cessions would

become effective in 1800.  *See* An Act for Establishing the Temporary and Permanent Seat of the Government of the United States, 1 Stat. 130 (1790).  Finally, in 1801, Congress enacted the "Organic Act" which provided for the government and the administration of justice in the District. 2 Stat. 103 (1801).  Residents of the District were therefore no longer eligible to vote in Maryland or Virginia as of at least 1801.  *Adams v. Clinton*, 90 F. Supp. 2d 35, 58 (D.D.C. 2000) ("*Adams I*").

The Constitution also set forth the structure of the United States House of Representatives and United States Senate.  Representatives in the House are elected "by the People of the several States," U.S. Const. art. I, § 2, cl. 1, and Senators likewise.  As the Supreme Court has explained on multiple occasions, the District is not a state, but "is an exceptional community ... established under the Constitution as the seat of the National Government."  *District of Columbia v. Murphy*, 314 U.S. 441, 452 (1941); *see also District of Columbia v. Carter*, 409 U.S. 418, 432 (1973) ("[The District] is 'the very heart—of the Union itself, to be maintained as the "permanent" abiding place of all its supreme departments, and within which the immense powers of the general government were destined to be exercised' ....  Unlike either the States or Territories, the District is truly sui generis i[n] our governmental structure." (quoting *O'Donoghue v. United States*, 289 U.S. 516, 539 (1933)).

Accordingly, the District has never been understood to be a state for purposes of representation in the House or Senate.  Indeed, the Framers were aware of and anticipated this.  At the New York ratifying convention, for example, some opposed the creation of a federal capital on the grounds that its residents would lack representation in Congress, and Alexander Hamilton unsuccessfully proposed a constitutional amendment providing for representation in Congress for the District once its population reached a certain size.  *Adams I*, 90 F. Supp. 2d at 51.  Subsequently, in the lead-up to the passage of the Organic Act, some objected to the federal assumption of

jurisdiction over the District on the grounds that its residents would be subject to laws but without representation in Congress. *Id.* at 52. And after the Organic Act's passage, some lobbied for retrocession of the District to Maryland or Virginia in order to correct the lack of representation in Congress for residents of the District. *Id.* at 53 (citing 12 Annals of Cong. 487 (1803) (remarks of Rep. Smilie). Examining Founding-era historical records at length, the Court in *Adams I* concluded that although there was ample "positive evidence of a contemporary understanding that District residents would not (and did not) have the right to vote in Congress, perhaps more important is the absence of evidence to the contrary." *Id.*

### B.   Other Courts Addressing Similar Arguments

The Court does not write on a blank slate. On several prior occasions, Courts in this Circuit have addressed the question of the District's congressional representation. Nearly twenty years ago, a three-judge panel of this Court exhaustively considered whether the District's residents (like Plaintiff) were entitled to congressional representation. *See Adams I.* The *Adams I* court joined "[a]ll" of its predecessor courts in concluding that "longstanding judicial precedent, as well as the Constitution's text and history" precluded the Court from granting the plaintiffs the relief they sought. *See Adams I*, 90 F. Supp. 2d at 72. The Supreme Courts summarily affirmed that decision. *See Adams v. Clinton*, 531 U.S. 941 (2000).

The three-judge court adjudicated the plaintiffs' claims concerning the non-apportionment of Representatives—dismissing them entirely—but found that it lacked jurisdiction over the remaining claims relating to representation in the Senate and Congress's authority over the District, and so remanded those claims to the initial judge—Judge Oberdorfer—alone. *Adams I*, 90 F. Supp. 2d at 38-40. The three-judge court dismissed all of the claims it considered because Article I limits representation in the House to residents of a state, and the District is not a state.

Having determined that Article I compels the status quo, the three-judge court concluded that neither the requirements of equal protection, the privileges of national citizenship, due process, or the Republican Guarantee Clause altered the outcome. *See, e.g.*, *id.* at 70-71 ("Nor can the Due Process Clause, any more than the Equal Protection Clause, be used to change elements of the composition of Congress that are dictated by the Constitution itself."), *aff'd* 531 U.S. 941 (2000)·

Separately, Judge Oberdorfer dismissed the claims that the three-judge court had remanded, concerning representation in the Senate and Congress's authority over the District. *Adams v. Clinton*, 90 F. Supp. 2d 27 (D.D.C. 2000) ("*Adams II*").

More recently, another three-judge panel of this court considered, and rejected, similar claims in *Castañon v. United States*, No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020). In *Castañon*, the court similarly concluded that the Constitution contemplated only that the residents of the states—which did not include the District—were entitled to elect voting Representatives to the House.  Indeed, the *Casañon* court noted that "a reading of 'State' in the applicable provisions of Article I that encompassed the District would lead to results that either are impossible or cannot have been contemplated by the Framers."  *Id.* at *18 (citing *Adams I*, 90 F. Supp. 2d at 47-49).  Elsewhere, the D.C. Circuit has noted that the Constitution already differentiates the District from a state, stating that "for residents of the District, the right to vote in congressional elections is not merely restricted-it is totally denied."  *See United States v. Thompson*, 452 F.2d 1333, 1340 (D.C. Cir. 1971), *abrogation on other grounds recognized by United States v. Cohen,* 733 F.2d 128, 135 (D.C. Cir. 1984) (en banc).

## STANDARDS OF REVIEW

"A motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'"  *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251,

257 (D.D.C. 2013) (second alteration in original) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)).  For such motions, the Court "'assume[s] the truth of all material factual allegations in the complaint'" and also "'construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Id.* (alteration in original) (quoting *Am. Nat'l Inc. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  However, the plaintiff "'bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction.'"  *Id.* (quoting *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)).  On a Rule 12(b)(1) motion, the plaintiff's "factual allegations … will bear closer scrutiny … than in reviewing a 12(b)(6) motion for failure to state a claim."  *Id.* (quotation marks omitted).  Additionally, "in determining whether it has jurisdiction, the Court 'may consider materials outside of the pleadings.'"  *Id.* (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

Dismissal is appropriate under Rule 12(b)(6) when it is clear that the plaintiff's claims fail as a matter of law from (i) the face of the complaint; (ii) any documents attached to or incorporated by reference into the complaint; or (iii) matters of which the Court may take judicial notice.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).  While the Court accepts the factual allegations in the complaint as true, to the extent that "a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 26 (D.D.C. 2015).  "Although the Court must accept the plaintiff's factual allegations as true, the Court is 'not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Id.* (quoting *Papason v. Allain*, 478 U.S. 265, 286 (1986)).

**ARGUMENT**

I.   **There Is No Cause Of Action Against The President And Plaintiff Cannot Obtain Equitable Relief Against The President**

Plaintiff's claims are doomed by the fact that there is no cause of action against the President and Plaintiff may not obtain—and the Court may not order—equitable relief directly against the President for his official conduct.  Accordingly, the Court should dismiss Plaintiff's Complaint on this basis alone.

As noted, Plaintiff lacks a cause of action to sue the President.  For instance, the President's actions are not reviewable under the Administrative Procedure Act, *see Dalton v. Specter*, 511 U.S. 462, 479 (1994), and likewise there is no implied equitable cause of action to do so.  Although courts of equity may (in certain circumstances) permit suits to "enjoin unconstitutional actions by … federal officers," *Armstrong v. Exceptional Child Ctr.*, 135 S.Ct. 1378, 1384 (2015), the availability of such relief depends on whether it "was traditionally accorded by courts of equity," *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 319 (1999).  Here, there is no tradition of equitable relief against the President.  Quite the opposite—the Supreme Court recognized long ago in *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866), that federal courts lack jurisdiction to "enjoin the President in the performance of his official duties," a principle the Supreme Court reaffirmed more recently in *Franklin v. Massachusetts*, 505 U.S. 788 (1992); *id.* at 827 (Scalia, J., concurring in part and concurring in the judgment) ("unbroken historical tradition supports the view" that courts may not order the President to "perform particular executive … acts").

Moreover, the Supreme Court has twice held that causes of action that are available against other government officials should not be extended to the President absent a clear statement by Congress.  *See Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982) (declining to assume that *Bivens*

and other implied statutory damages "cause[s] of action run[ ] against the President of the United States"); *Franklin*, 505 U.S. at 801 (declining to find cause of action against the President under the APA "[o]ut of respect for the separation of powers and the unique constitutional position of the President"). Accordingly, in the absence of an express statutory cause of action against the President or a tradition of recognizing such suits as a matter of equity, there is no basis for the Court to infer equitable relief against the President. "The reasons why courts should be hesitant to grant such relief are painfully obvious" given the President's unique constitutional role and the potential tension with the separation of powers. *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996).

Accordingly, this Court should reject Plaintiff's request for an injunction "requiring the Office of President to immediately correct all census returns to show the State of Columbia[,]" Compl. ¶ 39, and "order[ing]" that the President "immediate[ly] transmit[ ] … those amended census returns to Congress[,]' *id.* ¶ 40. Instead, Plaintiff's claims against the President (and thus this entire action) should be dismissed.

## II. Plaintiff Cannot State A Claim For Relief

### A. The Constitution Provides that the District is not a State

Again, the core of Plaintiff's claim is his mistaken belief that the District of Columbia is a state (the State of Columbia) and should be treated as one for the purposes of the census. Yet, the Constitution provides without reservation that the District is not in fact a state. This is clear from the text of Article I, and was recognized by the *Adams* court nearly twenty years ago. Indeed, the *Adams* holding is directly on point and squarely rejects the core of Plaintiff's argument: "In sum, we conclude that constitutional text, history, and judicial precedent bar us from accepting plaintiffs' contention that the District of Columbia may be considered a state for purposes of

congressional representation under Article I." *Adams I*, 90 F. Supp. 2d at 55-56.  The Court in *Castañon* concluded similarly—it would lead to "impossible" results to read "State" into the parts of Article I "that encompassed the District."  *Castañon*, 2020 WL 1189458, at *18.

This conclusion flows first from the text of the Constitution itself.  Article I, section 2, clause 1 provides that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States."  U.S. Const. art. I, § 2, cl. 1; *see also* U.S. Const. art. I, § 2, cl. 3 ("Representatives … shall be apportioned among the several States which may be included within this Union, according to their respective numbers.").  But there is no ambiguity in the Constitution—these provisions do not include the District of Columbia (or afford for the existence of a "State of Columbia").  Rather, Article I, Section 8, clause 17 states clearly that the District is not a state.

This conclusion finds further support in the Constitution's provision at Article I, section 2, clause 1, that the electors for Representatives in the House "shall have the Qualifications requisite for Electors of the most numerous Branch of the *State* Legislature," (emphasis added), and at Article I, section 4, clause 1, that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each *State* by the Legislature thereof." (emphasis added).  The District, of course, lacks any such state legislative apparatus, and thus it would be an impossibility for these two provisions to apply to the District (further confirming that under the Constitution's framework, the District is not a state and there is thus no "State of Columbia").  *See* U.S. Const. art. I, § 8, cl. 17 (granting Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over [the] District"); *see also* U.S. Const. art. I, § 2, cl. 4 ("When vacancies happen in the Representation from any *State*, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies" (emphasis added)).

Other Constitutional provisions also support this conclusion and doom Plaintiff's Complaint. Article II and the Twenty-Third Amendment, describing the election of the President, further demonstrate that District residents (like Plaintiff) are not entitled to House or Senate representation. Article II provides: "[e]ach state shall appoint, in such a Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. art. II, § 1, cl. 2. This language, of course, provides no voice for District residents in electing the President because the District is entitled to no Representatives and no Senators (and has no legislature) because it is not a state. Those who disagreed with this result were ultimately successful in implementing a reform through the political process—the Twenty-Third Amendment grants residents of the District electors in the electoral college. Of course, if the "State of Columbia" already existed, the Twenty-Third Amendment would have been superfluous.

Indeed, the text of the Constitution is clear and extensive historical evidence indicates that the Founders did not consider the District to be a state and that they understood the District's residents would not elect Representatives, Senators, or the President and that this was the result of considered calculation. *Adams* discusses the historical evidence at length. *See Adams I*, 90 F. Supp. 2d at 51-54. In fact, the Founders had reason to create a District that was not a state. By establishing a seat of federal government that was independent from any state, they sought to ensure that the federal government would not have to depend on another sovereign for its protection. In the words of James Madison, if the seat of federal government were placed within a state:

> not only the public authority might be insulted and its proceedings be interrupted, with impunity; but a dependence of the members of the general Government, on the State comprehending the seat of the Government for protection in the exercise of their duty, might bring on the national councils an imputation of awe or

9

influence, equally dishonorable to the Government, and dissatisfactory to the other
members of the confederacy.

*Adams I* at 50 n.25 (quoting The Federalist No. 43).  And this fear was not hypothetical—in 1783,

an angry crowd of protesters disrupted a meeting of the Continental Congress in Philadelphia. *Id.*

at 50 n.25.  Pennsylvania ignored Congress's pleas to summon its militia, forcing Congress to

decamp to New Jersey.  *Id.*

At bottom, it is clear that the Constitution expressly provides that the District is not a state.

Plaintiff attempts to differentiate his claim from *Adams I* because he believes there is a "State of

Columbia."  But simply calling it something different does not allow Plaintiff to opt out of

Article I, section 2 of the Constitution.

### B.      If Plaintiff Were Correct, the Constitution Would Be Unconstitutional

As noted, the Constitution dictates the lack of representation for residents in the District

precisely because the District is not a state.  From there, all of Plaintiff's claims fail.  Indeed, each

of Plaintiff's claims requires the Court to conclude that the Constitution (and its provisions about

the District) is unconstitutional.

The *Adams* court rejected the argument that other portions of the Constitution, including

the Equal Protection and Due Process Clauses, could be read to override the commands of

Article I:

> Plaintiffs argue that, even if we cannot find that Article I guarantees their right to
> vote in congressional elections, we should harmonize that Article with the other
> provisions discussed in this Part, which, they contend, do protect such a right. We
> do not disagree that we should strive to read the Constitution in a way that
> harmonizes its various provisions. We believe, however, that we have done so in
> the only way the words and historical interpretation of that document permit.
> Although the provisions considered in this Part protect rights guaranteed by the
> Constitution, our reading of Article I precludes the conclusion that the right
> plaintiffs seek to vindicate is one of those. Because the provisions of the
> Constitution that set forth the composition of Congress do not contemplate
> representation for District residents, we conclude that the denial of representation
> does not deny them equal protection, abridge their privileges or immunities, deprive

them of liberty without due process, or violate the guarantee of a republican form of government.

*Adams I* at 71-72.

To state the obvious—the Constitution must be constitutional. This instinctive understanding is likely why a number of express features of the Constitution have long escaped what might seem to be colorable challenges under the Equal Protection Clause or other grounds. For example, challenges to the allotment of two senators to each state, U.S. Const., art. I, § 3, cl. 1, or the requirement that the President "have attained the Age of thirty five Years," U.S. Const., art. II, § 1, cl. 5.  *Cf. U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783 (1995) (holding that the Constitution's requirements for office are fixed, and that "[i]f the qualifications set forth in the text of the Constitution are to be changed, that text must be amended").  To conclude otherwise would raise a host of problems and require courts to decide which constitutional provisions should take precedence over others.  *See Trinsey v. United States*, No. 00-cv-5700, 2000 WL 1871697, at *3 (E.D. Pa. Dec. 21, 2000) ("Our Founding Fathers adopted and the states ratified a Constitution that has endured for more than two centuries. The genius of it is that though not immutable, our Constitution is not subject to change by judicial fiat or presidential decree .... It is not the province of this Court to engage in constitutional amendment where it is asserted that part of the document is unconstitutional.").  And, while not easy, changes to the Constitution are certainly possible, as the Twenty-Third Amendment's allotment of presidential electors to the District demonstrates.

At bottom, the Constitution is necessarily constitutional, and all of its provisions must be interpreted in harmony.  To suggest otherwise, as Plaintiff does, is untenable.

III.     **Plaintiff's Reliance On The Equal Protection Clause Is Doomed**

Plaintiff again overlooks key features of the Constitution when he claims that Defendant's actions violate the Equal Protection Clause (what Plaintiff terms "Equal Footing Violations").  *See* Compl. ¶¶ 37-38.  This claim must fail because the equal protection framework scrutinizes classifications drawn by *statute*, whereas the classification to which Plaintiff objects inheres in the Constitution.   The court in *Adams* rejected equal protection claims for precisely this reason, concluding that "the voting qualification of which plaintiffs complain is one drawn by the Constitution itself" and therefore, "[t]his court is without authority to scrutinize those distinctions to determine whether they are irrational, compelling, or anything in between."  *Adams I*, 90 F. Supp. 2d at 65, 66-68; *see also Castañon*, 2020 WL 1189458, *20 (dismissing equal protection claim for failure to state a claim).

Throughout his Complaint, Plaintiff purports to distinguish *Adams*.  *See, e.g.*, Compl. ¶¶ 17, 26.  But the *Adams* holding (like the *Castañon* holding) unquestionably dooms Plaintiff's claims.  *See Adams I*, 90 F. Supp. at 72 ("But longstanding judicial precedent, as well as the Constitution's text and history, persuade us that this court lacks authority to grant plaintiffs the relief they seek.  If they are to obtain it, they must plead their cause in other venues.").   For example, the Constitution could be amended to provide for additional Congressional representation.  Or the District could continue to pursue statehood.  At bottom, political remedies exist, now and when *Adams* was decided, and it is beyond this Court's power to compel Congress into action, much less to re-write the Constitution.

Moreover, even if the equal protection framework were applicable here, Plaintiff's claim would fail because he cannot show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  U.S. citizens with representation in Congress are not similarly situated to Plaintiff because represented citizens are residents of states.  And as the Constitution clarifies, the District is not a state.  *See supra*.  Accordingly, Plaintiff fails to state a claim for relief under the Equal Protection Clause.

## IV.    **Plaintiff Lacks Standing**

Plaintiff's claims also fail for a lack of standing.  To meet "the 'irreducible constitutional minimum of standing,'" *Spokeo v. Robins*, __ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *id.*  Importantly, the standing analysis is "especially rigorous" where, as here, "reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."  *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

For the sake of the standing analysis, Defendant does not contest that Plaintiff has suffered an injury.  *See Baker v. Carr*, 369 U.S. 186, 206 (1962) ("[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue").  But that does not mean Plaintiff can satisfy his burden to demonstrate causation and redressability.  *See Castañon*, 2020 WL 1189458, at *8.  Simply put, Plaintiff complains about the constitutional framework that the Founders established.  Thus, the asserted injury is the result of the Constitution itself, not the Defendant's actions.  As such, "the alleged injury" is not "fairly traceable to the challenged conduct of the [D]efendant[ ]."  *Id.* at *9 (citing *Spokeo*, 126 S. Ct. at 1547).  In addition to claiming injury from the Constitution itself, the only other cause of Plaintiff's injury would be congressional inaction, which also dooms Plaintiff's ability to identify any injury "fairly traceable" to Defendant's actions.  *See Common Cause v. Biden*, 748 F.3d 1280, 1285 (D.C. Cir. 2014) ("In

short, [plaintiffs'] alleged injury was not created by any of the defendants, but by [ ] absent third parties") (quotation marks omitted).   Of course, Plaintiff's attempt to bring claims against congressional defendants would fail for the reasons discussed in the following sections. Accordingly, Plaintiff fails to establish the causation prong of the standing analysis.  *See Castañon*, 2020 WL 1189458, at *9.  And for the same reason (the fact that Plaintiff could only obtain his desired relief through congressional action), Plaintiff cannot establish redressability in this case, where Plaintiff has not named any congressional defendants.  *See id.*  Thus, the Court should dismiss Plaintiff's claims for lack of standing.

## V.      **Plaintiff Presents A Nonjusticiable Political Question**

The Court may also dismiss Plaintiff's claims because they present a nonjusticiable political question.[1]  A controversy is a nonjusticiable political question where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."  *Baker*, 369 U.S. at 217.  Here, Plaintiff seeks relief that would require by the political branches.  Indeed, contrary to Plaintiff's suggestion, *see* Compl. ¶ 34, neither the Constitution nor Congress has recognized the District as a state and thus congressional action would be necessary for Congress to do so (proposing a constitutional amendment, among other things).  *See Igartúa de la Rosa v. United States*, 842 F. Supp. 607, 609-10 (D.P.R. 1994) (deferring plaintiffs' arguments that Puerto Rico should be a state to Congress), *aff'd*, 32 F.3d 8 (1st Cir. 1994); *see also Downes v. Bidwell*, 182 U.S. 244, 312 (1901) (White, J., concurring) (holding that admission into statehood is a political question); *Phillips v. Payne*, 92 U.S. 130, 133-134 (1875) (declining to question

---

[1] To be sure, the *Adams I* court concluded otherwise, *see Adams I*, 90 F. Supp. 2d at 40, and thus Defendant addresses this only briefly.

Congress's decision to retrocede part of the District to Virginia).  Accordingly, the Court should decline to wade into this political dispute.

VI.     **Plaintiff's Desired Relief Would Require Congressional Action**

As noted, the ultimate relief Plaintiff seeks is for the District to be considered a state and thus for District residents to be considered state residents.  Yet, Plaintiff cannot overcome the fact that the Constitution, the District's political leaders, and Congress do not consider the District to be a state.  Rather, to achieve the relief Plaintiff seeks, Congressional action would be required. This presents another fatal defect of Plaintiff's claim—the Speech or Debate Clause and separation of powers principles preclude such relief.  Perhaps recognizing this, Plaintiff does not expressly seek an order directing Congressional action.  But in light of the liberal interpretation afforded to complaints filed by *pro se* litigants, *see Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009), Defendant addresses briefly why such a claim would also fail, should the Court consider Plaintiff to have raised it.

Under the Constitution's Speech or Debate Clause, a plaintiff cannot sue Members of Congress for their performance of legislative duties.  *See* U.S. Const., art. I, § 6, cl. 1.  The Speech or Debate Clause is an "absolute bar to interference," and "'reinforc[es] the separation of powers'" and "'insure[s] that the legislative function the Constitution allocates to Congress may be performed independently.'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975) (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)).  The Clause is therefore read "broadly to effectuate its purposes," *Gravel v. United States*, 408 U.S. 606, 625 (1972) (quoting *Johnson*, 383 U.S. at 180).  Although the heart of the Clause is speech or debate on the floor of the House or Senate, it also extends to "the deliberative and communicative processes … with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters

15

which the Constitution places within the jurisdiction of either House" as "necessary to prevent indirect impairment of such deliberations." *Gravel* at 625. To achieve the relief Plaintiff desires— treatment of District residents as residents of a state—the Constitution confirms that Congressional action would be required (namely, a Constitutional amendment). But Plaintiff could not compel such action through this litigation. *See Pauling v. Eastland*, 288 F.2d 126, 130 (D.C. Cir. 1960) ("[A] declaratory judgment would be as effective an impingement upon and interference with legislative proceedings as a flat injunction would be.").

Plaintiff's claim also raises serious separation-of-powers concerns, as it would require directing Congress to legislate or propose constitutional amendments. The separation of powers prohibits the entry of any order, whether for declaratory or injunctive relief, directing Congress to take, or refrain from taking, any legislative action. *See, e.g., Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) ("a legislature's failure to enact a special law is itself unreviewable"); *Newdow v. U.S. Congress*, 328 F.3d 466, 484 (9th Cir. 2003) ("[T]he federal courts lack jurisdiction to issue orders directing Congress to enact or amend legislation."), *rev'd on other grounds*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004); *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference.").

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its Motion and dismiss

Plaintiff's Complaint.

May 8, 2020                                  Respectfully submitted,

                                            TIMOTHY J. SHEA
                                            D.C. Bar #437437
                                            United States Attorney

                                            DANIEL F. VAN HORN
                                            D.C. Bar #924092
                                            Chief, Civil Division

                        By:     */s/ Brian J. Field*
                                            BRIAN J. FIELD
                                            D.C. Bar #985577
                                            Assistant United States Attorney
                                            555 4th Street, N.W.
                                            Washington, D.C. 20530
                                            Tel: (202) 252-2551
                                            E-mail: Brian.Field@usdoj.gov

17