**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| John H. Page ) | |
| 1077 30th Street NW ) | |
| Apt. 411 ) | |
| Washington, D.C. 20007 ) | |
| Tel: 202 352 6952 ) | |
| ) | Case No. |
| Plaintiff ) | 1:20-cv-00104 CRC |
| ) | |
| v. ) | |
| ) | |
| Donald J. Trump, in His Official ) | |
| Capacity as President of the United ) | |
| States, Office of the President ) | |
| 1600 Pennsylvania Avenue, N.W. ) | |
| Washington, D.C. 20500 ) | |
| ) | |
| Defendant ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

John H. Page (pro se)
1077 30th Street NW, Apt 411
Washington, D.C. 20007
Telephone: 202-352 6952
john.h.page@gmail.com

May 18, 2020

1

## Table of Contents

I.     BACKGROUND ...................................................................................................... 5

II.    THE DISTRICT IS NOT A STATE .......................................................................... 5

III.   NON-DISTRICT LAW IN COLUMBIA ................................................................... 7

IV.    1790 ACT ON PERMANENT USG SEAT AND STATE LAW ................................ 8

V.     1801 ORGANIC ACT AND STATE LAW ............................................................... 9

VI.    THE 1801 ORGANIC ACT IS CONSTITUTIONAL................................................ 9

VII.   STATE AND FEDERAL LAW ARE SEPARATE JURISDICTIONS ...................... 10

VIII.  CONGRESS IS NOT A STATE LEGISLATURE.................................................... 12

IX.    PARTITION OF MARYLAND................................................................................ 13

X.     CASTAÑON – LIMITATIONS ON CONGRESS..................................................... 13

XI.    SOVEREIGN STATE CONSTITIUTION UNCHANGED ...................................... 16

XII.   STATE LAW CONTROLS....................................................................................... 17

XIII.  STATES EQUAL PROTECTION ............................................................................ 17

**XIV.   PLAINTIFF'S CLAIMS ARE UNDER STATE LAW** ........................................................................ **17**

**XV.   PLAINTIFFS CLAIMS ARE FOR CONSTITUTIONAL VIOLATIONS** .................................................... **18**

**XVI.   INJURY** ............................................................................................................................................ **21**

### Cases

Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)................................................................. passim

Capital Traction Co. v. Hof, 174 U.S. 1 (1899)............................................................................ 14

Castañon v. United States, No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020)13,    14, 17, 19

DALTON, SECRETARY OF THE NAVY, ET AL. v.SPECTER ET AL. No. 93-289.............. 20

**Marbury v. Madison, 5 U.S. 1 Cranch 137 137 (1803)** ............................................................ 20

Minor v. Happersett, 88 U.S. (21 Wall.) 162 (1875)................................................................... 17

Nixon v. Fitzgerald, 457 U.S. 731 (1982).................................................................................... 20

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952) ................................................ 20

### Statutes

An Act Concerning the District of Columbia, 2 Stat. 103 (1801) ......................................... passim

An Act for Establishing the Temporary and Permanent Seat of the Government of the United States, 1 Stat. 130 (1790) ......................................................................................................... 8

Maryland Bill of Rights and Constitution 1776................................................................... passim

U.S CONST. Amendment X............................................................................................... passim

U.S. CONST. Amendment XIV Equal Protection....................................................................... 17

U.S. CONST. Amendment XXIII.................................................................................... 12

U.S. CONST. Art I, § 2 cl. 3........................................................................... 11, 14, 15, 16

U.S. CONST. Art IV....................................................................................................... 15, 19

U.S. CONST. Art. I, § 8, cl. 17.......................................................................... 11, 12, 18

U.S. CONST. art. I, ꝃ 3, cl. 1........................................................................................ 12

U.S. CONST. Art. II............................................................................................................ 12

## I.      BACKGROUND

1.      Plaintiff filed suit in January 2020 and Defendant was duly served along with the US Attorney General and U.S. Attorney for DC.  Defendant filed a Motion to Dismiss on May 8, 2020 (the "Motion").

2.      Defendant's Motion does not contest that Plaintiff has suffered injury (Section IV page 18 of the Motion), so that fact is not in dispute.

## II.      THE DISTRICT IS NOT A STATE

3.      This case is not about the District of Columbia; it's about the constitutionally guaranteed State representation rights of residents of Columbia.  The latter is jurisdictionally distinct from the former simply because of "The impossibility of treating Congress as the [State] legislature under that [District] clause is manifest[1]" therefore such rights cannot run through the District.  They are and were protected by the Tenth Amendment which came into force in 1791, before the District was created.

Defendant's Motion spends a great deal of time proving or disproving facts about the District of Columbia which are mostly irrelevant.  To be lawful, the partitioning of Columbia from Maryland, in which Congress subsequently erected the District as seat of the United States Government, necessarily preserved all State rights in MARYLAND CONST. OF 1776 not delegated to Congress under U.S. CONST. Art. I, § 8, cl. 17.  Not only are those undelegated rights sovereign, they are explicitly assented to by Defendant under his signature to the Acts creating the District.  These are the core facts of the Complaint which Defendant does not disprove in his Motion.

---

[1] Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)

Because the subject rights are State rights and because the land partitioned from Maryland is called Columbia, Plaintiff uses the term State of Columbia to demark both the geographic and jurisdictional boundaries of those rights and uses the term Columbia State Constitution[2] to refer to the sovereign law MARYLAND CONST. OF 1776 which binds Columbia to the Union and vice versa and in which its people's rights, minus those delegated to Congress in the District, are written.

4.      Defendant's Motion has disproved none of the facts used to support Plaintiff's claims.  Defendant falsifies Plaintiff's position in the preamble on page 6 of the Motion:

> "In this case, Plaintiff takes a unique, albeit untenable, tack. According to Plaintiff, the District is already a state (the 51st state called the "State of Columbia) and thus there is nothing standing between District residents and the congressional franchise."

In addition to being false, Defendant's statement is the exact opposite of what is clearly declared in Plaintiff's Complaint.  First, nowhere does Plaintiff claim "the District is already a State" or anything similar and second, page 5 of the Complaint explicitly states that the District is not a State:

> "E.   Is the District of Columbia or the State of Maryland a state for the purposes of Columbia's participation in the Congressional franchise?
> No, this answer has already been affirmed in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)."

Defendant's above attempt have this case dismissed by disproving the <u>opposite</u> of Plaintiff's claims is egregious misrepresentation of the facts.

---

[2] Identical to the Maryland State Constitution at the time of Columbia's partition from it in 1801 as stipulated in section 1 the 1801 Organic Act.

### III.   NON-DISTRICT LAW IN COLUMBIA

5.      Regarding the main question on page 1 of the Complaint (see below), Defendant

provides no such grounds and does not disprove the facts of non-District law i.e. law governing

rights for the purpose of which the District is not a state[3] and therefore not subject to U.S. CONST.

Art. I, § 8, cl. 17, outside Congress' enumerated powers over the District and not a political

question:

> "Plaintiff presents the following question: Defendant and Congress have assented
> to Columbia's non-District law which explicitly allows the election of a State
> legislature and representatives to Congress.  Does Defendant have any grounds
> for omitting Columbia, a State of the Union, from the census for the purposes of
> apportioning participation in the Congressional franchise?"

6.      Defendant cites the historical review in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C.

2000).  Defendant's Motion does not change the clear written word of law that resulted from history;

the District is not a State for the purposes of apportionment and the residents of Columbia are not

barred from exercising their rights to State representation.  Even in Adams v. Clinton the opinion agrees

with the dissent within the three-judge panel (below) and, of course, District residents are also

Columbia residents and this Complaint asserts Columbia law unlike in the Adams v Clinton complaint:

> "It is also true, as our dissenting colleague argues, that the historical rationale for the
> District Clause "ensuring that Congress would not have to depend upon another
> sovereign for its protection" would not by itself require the exclusion of District
> residents from the congressional franchise."

7.      If history is to be argued though, for example, there was outcry from the 8,000 residents

of Columbia the time is evidence they could not understand how their rights had disappeared; had the

politicians bungled and unconstitutionally disenfranchised them? The way the law was written, the

---

[3] As opposed to and not to be confused, for example, with the existence of the District of
Columbia State Board of Education for which purpose the District has been determined to be
a State.

District was no longer part of Maryland for the purposes of participation in the Congressional franchise but, as argued in the Complaint, the act of cession was lawful because it provided for undelegated State rights to survive in Columbia.  History, therefore, does not disprove the facts of the Complaint which includes at para. 17 at page 5 "The opinion in Adams did not consider any theory of participation under the State laws of Columbia"  The State of Columbia, like the District of Columbia, is sui generis and Plaintiff's case is de novo.

### IV.   1790 ACT ON PERMANENT USG SEAT AND STATE LAW

8.    None of the legal facts provided in the Complaint have been shown as false. Ironically, Defendant references an Act that factually proves Plaintiff's claims in his Background at page 7 of the Motion, stating:

> "provided that the cessions would become effective in 1800. *See* An Act for Establishing the Temporary and Permanent Seat of the Government of the United States, 1 Stat. 130 (1790)."

That very 1790 Act cited by Defendant proves Plaintiff correct; Columbia's state law was preserved by Congress because that Act provides verbatim (emphasis added):

> "BE it enacted by the Senate and House of Representatives of the United States of America in Congress assembled , That a district of territory, not exceeding ten miles square, to be located as hereafter directed on the river Potomack, at some place between the mouths of the Eastern-Branch and Connogochegue be, and the same is hereby accepted for the permanent seat of the government of the United States: **Provided nevertheless , That the operation of the laws of the state within such district shall not be affected by this acceptance**, until the time fixed for the removal of the government thereto, and until Congress shall otherwise by law provide."

## V.   1801 ORGANIC ACT AND STATE LAW

Congress did <u>not</u> provide otherwise than the 1790 Act on removal; the intent of the above

Act is carried through in the 1801 Organic Act which Plaintiff cited as a fact in the Complaint at

footnote 6:

> An Act Concerning the District of Columbia, 2 Stat. 103 (1801) (the "1801 Organic
> Act") at section 1:
> "..the laws of the state of Maryland, as they now exist, shall be and continue in
> force in that part of the said district, which was ceded by that state to the United
> States, and by them accepted as aforesaid."

The above referenced "laws of the state of Maryland" include the MARYLAND CONST.

OF 1776.

## VI.   THE 1801 ORGANIC ACT IS CONSTITUTIONAL

9.   Plaintiff notes that Columbia has States rights because it never left the Union, not

<u>because</u> of the 1801 Organic Act, it has States rights because its people are sovereign and have

their own sovereign State law.  Defendant cannot dispute that Columbia's people ratified the U.S.

Constitution along with the rest of Maryland on January 30, 1781 and thereby District powers were

delegated to Congress on its cession.  These delegated powers did <u>not</u> include being Columbia's

State legislature see Adams v Clinton in VII below.  Even if the 1801 Organic Act had <u>not</u> stated

the laws of the State of Maryland (as they were then) would survive cession Plaintiff would still

be before you; he would complain that such an Organic Act violated the Columbia State

Constitution (i.e. MARYLAND CONST. OF 1776) and the U.S. Constitution, especially the 10th

Amendment of the latter U.S CONST. Amendment X.  It matters that the 1801 Organic Act was

constitutional because by assenting to it the Defendant became estopped from disputing Columbia

inherited "..the laws of the state of Maryland.." i.e. MARYLAND CONST. OF 1776.

9

## VII.    STATE AND FEDERAL LAW ARE SEPARATE JURISDICTIONS

10.    The legal facts are the District of Columbia is exclusively legislated for by Congress under U.S. CONST. Art. I, § 8, cl. 17 ("District Clause") and the State of Columbia is controlled by its sovereign people through its State Constitution to the extent the latter has not been superseded (Set forth in complaint Question G, para. 19, page 6).  The State and District are and must be separate jurisdictions as asserted in para. 4 on page 1 and para. 23 of page 7 of the Complaint and not disproven in the Motion. Columbia retains State law and State rights but its people have no power over the District jurisdiction because those sovereign powers were subordinated to Congress per the District Clause.  Para. 4 of the complaint says this plainly:

> "In Columbia, as everywhere else in the Union, all sovereign laws are under State jurisdiction except where powers are enumerated to Congress."

11.    The Motion says "A. The District's Status.  Upon ratification, the Constitution provided for the establishment of a permanent federal capital—separate and apart from any state." but the assertion at the end of Defendant's sentence is not a fact; the U.S. Constitution does not say this and no argument or citation is provided by the Defendant to support it.  Furthermore:

a) Yes, Congress has exclusive, direct, legislative District-level powers and is therefore free from interference from any State, including Columbia, but that is as far as the Constitution goes.  The Constitution does not enumerate to Congress the power to disenfranchise the people of the District from their U.S. CONST. Art. I, § 2, cl. 3 rights which were guaranteed on Maryland's ratification of the Union and constitutionally protected.

b) Plaintiff is well aware that the Philadelphia Mutiny of 1783 gave rise to concerns of undue influence from the State in which the nation's capital would be situated and this influenced

10

the wording of the District Clause drafted some three and a half years later by granting Congress exclusive District-level powers.  Furthermore, if Defendant's above statement about the U.S. Constitution is true, that the District is completely "separate and apart from any state" in ALL regards, it renders section 1 of the 1801 Organic Act unconstitutional because it affirms State law in Columbia and, if that is the consequence of Defendant's statement being true, then cession itself was carried out unconstitutionally which kicks the legs out from underneath the Motion anyway.

c) Finally regarding history the Motion has not disproved that, in addition to respecting the founder's drafting of the U.S. Constitution, the Defendant must respect that the Maryland Bill of Rights and Constitution at the time of Columbia's partition from Maryland is law. Plaintiff deals with this at question I on page 8 of the Complaint claiming "The State of Columbia only has the rights and powers not enumerated to Congress under the District Clause U.S. CONST. Art. I, § 8, cl. 17" and Defendant fails to show this is false or provides any cause why admission of Columbia to the Congressional franchise via the requested relief poses any threat to the Federal Government's security intended by the District Clause.

12.     The Defendant asserts throughout his motion that the District is not a State but that is not in dispute (see para. 4 above) and that fact is not a disproof of any of Plaintiff's claims.

13.     Defendant's pointing to the District Clause neither disproves nor explains how the people of Columbia's indefeasible U.S. CONST. Art I, § 2 cl. 3 State rights to participation in the Congressional franchise, subject to apportionment, (see complaint paras. 22 and 23 on page 7) would or could have been extinguished.  Defendant, therefore, has failed to disprove that Columbia's people's rights to representation in the U.S. Constitution and their State Constitution

11

survived its partition from Maryland.  Plaintiff maintains those rights, to the extent not delegated under the U.S. Constitution, are extant under both the U.S. Constitution and State law and complains they are frustrated by Defendant's failure of duty.

## VIII.   CONGRESS IS NOT A STATE LEGISLATURE

14.     Said U.S. Const. Art. I rights to right to participation in the Congressional franchise were definitely intact on Columbia's partition from Maryland as evidenced by the 1801 Organic Act section 1 and they definitely weren't transferred to Congress; affirmed per curiam in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) all of which is laid out in the Complaint page 4 footnote 2 unopposed by Defendant:

> As originally provided under Article I, section 3, the Senate was to be "composed of two Senators from each State," chosen not "by the People of the several States," as in the case of the House, but rather "*by the Legislature thereof.*" U.S. CONST. art. I, ⸹ 3, cl. 1 (emphasis added). **The impossibility of treating Congress as the legislature under that clause is manifest**

15.     Defendant at page 14 of the Motion mentions the U.S. CONST. Amendment XXIII and U.S. CONST. Art. II, his arguments regarding the District are valid on their face but do not alter any facts relevant to this case.  Whether the 23rd Amendment was necessary or not, and that it used the political process, does not disprove the factual legal basis for participation of Columbia in the Congressional franchise given in the Complaint.  Clearly, if the U.S. Constitution under Amendment XXIII says that the rights of the residents of Columbia to vote in Presidential elections run through the District then they do not run through Columbia.  Importantly, a constitutional amendment was necessary because the District Clause did not and does not empower Congress to act as Columbia's State Legislature for the purposes of Presidential elections.  Plaintiff concurs that a constitutional amendment specifying apportionment of representation in Congress for the

District could make the instant case moot, however, that is not before the court and the people should not be forced to politick over a guaranteed right that is the basis of U.S. democracy.

## IX.    PARTITION OF MARYLAND

16.    Defendant provides no source of enumerated power of any body whatsoever to annul or repeal in any way Columbia's right to participation in the Congressional franchise as a State subject to apportionment.  Defendant seems to argue that the right disappeared on cession at 1801 but provides no theory as to how that could be done without violating not only the U.S. Constitution but also violating Congress' 1801 Organic Act and the provisions in Maryland's State Constitution (as it was then) that have not been superseded or repealed (see also para. 33 of the Complaint on page 11).  Defendant, therefore, has not even faced let alone surmounted the hurdle of disproving that section 27 of Columbia's State Constitution from MARYLAND CONST. OF 1776, quoted verbatim in para. 21on page 6 of the Complaint, was affirmed by Congress' Organic Act of 1801 and assented to by Defendant, is still in full force and effect.

## X.    CASTAÑON – LIMITATIONS ON CONGRESS

17.    Defendant also cites Castañon v. United States, No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020) which had not been decided when the Complaint was filed.  However, Castañon (verbatim below) proves Plaintiff's assertions, not disproves; the Castañon opinion clarifies that Congress' rights are plenary but "save as controlled by the provisions of the constitution" and "so long as other provisions of the Constitution are not infringed".  Castañon precisely captures the incoherence in Defendant's Motion; Defendant concurs that the District is not a State but cannot deny that the 10th Amendment protections preserved Columbia's State rights which survived its partition from Maryland (see Complaint para. 18 on page 5 and para. 24 on

page 7).  Castañon confirms that no branch of the Federal government is the absolute lawmaker of Columbia, all are subject to the U.S. Constitution as the supreme law.  It is a necessary legal consequence that the 10th Amendment prevented Columbia from being excluded from the Union and thus Defendant violated Plaintiff's privileges and rights to representation under U.S. CONST. Art I, § 2 cl. 3 by excluding the State of Columbia in the census returns by referring to it only as the District of Columbia[4].  This limitation on Congress' powers was claimed in Complaint Question L, para. 31 on page 11, is not disproven by the Motion and is explicitly supported by the Castañon opinion which cites from Capital Traction Co. v. Hof, 174 U.S. 1 (1899) (emphasis added):

> "The Congress of the United States, being empowered by the Constitution "to exercise exclusive legislation in all cases whatsoever" over the seat of the national government, has the entire control over the District of Columbia for every purpose of government -- national or local. It may exercise within the District all legislative powers that the legislature of a state might exercise within the state, and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit **so long as it does not contravene any provision of the Constitution of the United States**. *Kendall v. United States,* (1838), 12 Pet. 524, 37 U. S. 619; *Mattingly v. District of Columbia* (1878), 97 U. S. 687, 97 U. S. 690; *Gibbons v. District of Columbia* (1886), 116 U. S. 404, 116 U. S. 407.

18.    Below also from the Castañon opinion that decides Congress' plenary power in the District is not absolute i.e. the Constitution is still the supreme law and Congress may not violate it:

---

[4] Plaintiff notes that like Columbia, Alaska, Delaware and Wyoming have also always been states with only one congressional district. The census refers to them as States. If the Clause 17 District was removed to Delaware, for example, would the Defendant deny them representation in Congress?

One difficulty here is that the inquiry Plaintiffs would have the Court undertake is rather circular: Plaintiffs contend that Congress's plenary power over the District is what renders those constitutional provisions that tie House representation to the States nonexclusive. But we break through this chicken-or-egg conundrum by observing that multiple Supreme Court pronouncements undercut the notion that Congress's District Clause power has no outer limits. The Supreme Court has repeatedly recognized that the other provisions of the Constitution serve as a check on Congress's District Clause power. *See, e.g., Keller v. Potomac Elec. Power Co.,* 261 U.S. 428, 442-44 (1923) (concluding that Congress could not contravene Article III by using its District Clause powers to create jurisdiction in the Supreme Court to consider appeals from the D.C. Court of Appeals' review of utility commission proceedings). That is, Congress's power over the District is indeed "plenary" – "save as controlled by the provisions of the Constitution." *Binns v. United States,* 194 U.S. 486, 491 (1904); *see also Atl. Cleaners & Dyers v. United States,* 286 U.S. 427, 434-35 (1932) (Congress may legislate with respect to the District "so long as other provisions of the Constitution are not infringed" (citation omitted)); *Capital Traction Co.,* 174 U.S. at 5 (Congress may legislate with respect to the District "so long as it does not contravene any provision of the constitution of the United States" (citation omitted)); *see also Palmore v. United States,* 411 U.S. 389, 397 (1973) (quoting this language from *Capital Traction Co.*); *cf. Stoutenburgh v. Hennick,* 129 U.S. 141, 147 (1889) (stating that, under the District Clause, Congress "possess[es] the combined powers of a general and of a state government in all cases *where legislation is possible*" (emphasis added)).

19.     To put it another way, U.S. CONST. Art I, § 2 cl. 3 reserves representation to States of the Union and neither the Defendant nor Congress has or had any power to deprive a state or part of a state of Constitutionally guaranteed and reserved representation rights by divorcing it from statehood; the preservation of undelegated State rights in Columbia was and is a Constitutional requirement under the Tenth Amendment and must be reflected in Defendant's census returns.

20.     The partition of Maryland to create the District is sui generis in an additional sense. All other partitions of states or parts of states were voluntary with the partitioned territory creating its own, new, sovereign law prior to acceptance back into the United States under U.S. Const Art. IV.  Columbia's partition is different, it was constitutional but involuntary; Columbia did not choose to surrender or forgo any sovereign rights not delegated to Congress.  While some, perhaps including the Defendant, contend there was a quid pro quo in becoming residents of the District

there was certainly no bargain by Columbia's residents surrendering U.S. CONST. Art I, § 2 cl. 3 rights that the Motion would have to show to disprove the facts in the Complaint.

## XI.   SOVEREIGN STATE CONSTITIUTION UNCHANGED

21.     Plaintiff doubts that Defendant has reviewed the Maryland constitution (as it was then in 1801) which is the MARYLAND CONST. OF 1776; Section 49[5] of this sovereign law that has now become Columbia's State Constitution prevents its being changed absent a vote to do so by two successive state legislatures and thus prevents it being changed by anyone else including the Defendant or Congress . This Defendant therefore cannot disprove that he assented to protected state law in Columbia which explicitly provides for elections to Congress at Section 25 (reproduced in the Complaint para. 21 pages 6-7) and that this law survives to this day.  Congress is not Columbia's State Legislature (see para. 14 above); this is prohibited by both State law as well as the U.S. Constitution and the Motion does not even discuss let alone disprove the Complaint regarding Defendant's obligation to faithfully uphold those laws.

---

[5] "LIX. That this Form of Government, and the Declaration of Rights, and no part thereof, shall be altered, changed, or abolished, unless a bill so to alter, change or abolish the same shall pass the General Assembly, and be published at least three months before a new election, and shall be confirmed by the General Assembly, after a new election of Delegates, in the first session after such new election; provided that nothing in this form of government, which relates to the eastern shore particularly, shall at any time hereafter be altered, unless for the alteration and confirmation thereof at least two-thirds of all the members of each branch of the General Assembly shall concur."

## XII.   STATE LAW CONTROLS

22.     The Complaint is valid under Columbia State law and Defendant offers no disproof why Minor v. Happersett, 88 U.S. (21 Wall.) 162 (1875) should not be applied in this case, see para. 20 on page 6 of the Complaint.

## XIII.   STATES EQUAL PROTECTION

23.     Section III of the Motion claims the Equal Protection doctrine does not apply because the District is not a State.  Yes, Equal Protection does not apply to the jurisdiction of the District of Columbia because it is not a State; but that is not before the court.  Plaintiff asserts Equal Protection in Columbia's State jurisdiction for its undelegated State rights (Complaint para. 37 on page 14) and no disproof of this is offered in the Motion.

## XIV.   PLAINTIFF'S CLAIMS ARE UNDER STATE LAW

24.     Section IV of the Motion discusses Standing.  Defendant claims Plaintiff is injured by the Constitution itself but cites opinion and precedents that are only relevant under District law and thus do not disprove any of Plaintiff's facts.  Unlike the plaintiffs in Adams v Clinton or in Castañon who brought their actions as District residents and which were judged solely under District law, Plaintiff brings this Federal Court action under Columbia State law as a resident of Columbia (see Complaint paras. 11 and 12 at page 3) so his U.S. CONST. Art I, § 2 cl. 3 claims as to the right of apportionment of representation in Congress for Columbia must be judged under non-District State law as clearly stated on page 12 of the Complaint:

> "Plaintiff is only claiming State of Columbia's Constitution is in full force and effect to the extent it has not been succeeded by the U.S. Constitution or valid acts of Congress affecting all States or the District of Columbia in particular."

25.     As shown before in this Opposition and in the Complaint, Art I section 2 clause 3 State rights remain under the people's sovereign jurisdiction, are protected by the 10th Amendment,

17

explicitly recognized in the 1801 Organic Act and per curiam in Adams v Clinton are not delegated to Congress under the District Clause Art I, § 8 cl. 17.  Hence, Defendant has failed to prove that Plaintiff's claims are based on the U.S. Constitution being unconstitutional; Plaintiff is complaining that Defendant is violating the Constitutional protections of State rights and undeniably violating the very Organic Act Defendant assented to in 1801 which affirms the people of Columbia are entitled to the un-superseded laws of the State of Maryland (as they were then).

### XV.    PLAINTIFFS CLAIMS ARE FOR CONSTITUTIONAL VIOLATIONS

26.    Defendant claims throughout his Motion that Columbia is not a State because the District is not a State.  This is faulty reasoning.  The founders had to achieve creation of the District constitutionally so they could not extinguish promises in the supreme law in a way that did not treat the partition unequally.  It was well known that at cession Columbia's population did not qualify it for apportionment and would not do so until 1860, see section I.3 of the Complaint, but Defendant ignores this important historical context in arguing facts from Adams on page 8 of the Motion and therefore does not disprove the complaint.  Plaintiff concurs with the Adams opinion that the cause of injuries in the District was the Constitution (not cession) and argues District law is not relevant to the litigation of rights not delegated to Congress simply because the people's sovereign rights do not run through the District; they are jurisdictionally separate – see para 4 on page 1 of the Complaint.  Plaintiff is both a resident of Columbia as well as being a resident of the District.

27.    Justiciability - Defendant's Motion under Federal Rules of Civil Procedure 12(b)(6) fails to show that the relief requested in see paras. 39 and 40 on pages 14 and 15 of the Complaint cannot be granted.  Sections V and VI of Motion state "Here, Plaintiff seeks relief that would require [sic] by the political branches."  Defendant, however, fails to provide a responsive

18

argument to support that statement and ignores that relief actually requested is merely compliance

with the Constitution by the Defendant to carry out his statutory duty.  Contrary to Defendant's

unsupported assertions, no Act of Congress or amendment to the Constitution is required because

Columbia has met all the conditions of U.S. CONST. Art IV Admission see Question F page 5 of

the complaint which fact is not challenged by Defendant.  Castañon explains that upon issuance

of a new census report Congress' actions are purely mechanical so there is no political question

involved (see verbatim quote below):

> majority cited this language with approval in *Evans*, 536 U.S. at 460, 464, there considering a
> challenge to the methodology used in the 2000 decennial census, *id.* at 457-58.  In addressing
> redressability, the *Evans* Court found that "a declaration leading, or an injunction requiring, the
> Secretary" of Commerce to issue a new census report using a different calculation method "would
> amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly
> redresses the injury suffered," *id.* at 464, as "the relevant calculations and consequent
> apportionment-related steps" that would follow a new report's issuance (and would redress the
> asserted injuries) "would be purely mechanical," *id.* at 463.

28.     The Motion states under its Argument section commencing page 11: "There Is No

Cause Of Action Against The President And Plaintiff Cannot Obtain Equitable Relief Against The

President".  This is the incorrect, Plaintiff is not suing for something Defendant has done or to try

and have this court order a discretionary decision by the President.   Plaintiff is suing for

Defendant's failure to follow the constitution and the law consequent to which Congress must

carry out apportionment according to the census' enumeration as dictated by the Constitution.

29.     This court has peviously found in Adams v Clinton:

> "We do not agree that the political question doctrine bars our consideration of this
> case. The Supreme Court has repeatedly declared that "[c]onstitutional challenges
> to apportionment are justiciable." Franklin v. Massachusetts, 505 U.S. 788, 801 &
> n. 2, 112 S. Ct. 2767, 120 L. Ed. 2d 636 (1992) (plurality opinion of O'Connor, J.)
> (citing U.S. Department of Commerce v. Montana, 503 U.S. 442, 112 S. Ct. 1415,
> 118 L. Ed. 2d 87 (1992)); accord Wesberry v. Sanders, 376 U.S. 1, 6, 84 S. Ct. 526,
> 11 L. Ed. 2d 481 (1964)."

30.     Furthermore, to Defendant's general assertion of immunity, no court has ever found that a President may act unconstitutionally and not face justice; as Chief Justice John Marshall told us in Marbury v. Madison, 5 U.S. 1 Cranch 137 137 (1803) for every legal right there is a remedy Id. at 149 stating that the President "is a high officer, but he is not above law".

31.     The Motion cites DALTON, SECRETARY OF THE NAVY, ET AL. v.SPECTER ET AL. No. 93-289. Argued March 2, 1994-Decided May 23,1994 but it is not relevant; Plaintiff's action is a constitutional violation claim not an administrative one.  From the above case:

> "Respondents filed this action under the Administrative Procedure Act (APA) and
> the Defense Base Closure and Realignment Act of 1990 (1990 Act), decision
> differentiates between constitutional and administrative claims.."
> "On the contrary, this Court's decisions have often distinguished between claims
> of constitutional violations and claims that an official has acted in excess of his
> statutory authority."

32.     Defendant cites Nixon v. Fitzgerald, 457 U.S. 731 (1982), a Supreme Court of the United States court case, that dealt with immunity from suit of government officials performing discretionary functions when their action did not violate clearly established law.  Defendant's actions regarding the census are non-discretionary duties under the Constitution which the Defendant has sworn an oath to uphold.

33.     Defendant does not overcome Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952) which rejected the argument that the President's power to "faithfully execute" the laws gives him a power to create law and decided the President and his subordinates "may not lawfully defy an Act of Congress if the Act is constitutional."  The Complaint asserts that the 1801 Organic Act imposing Maryland State law (as it was then) in Columbia was constitutional, provides for a State Legislature and members of Congress (reproduced in the Complaint para. 21 pages 6-7) and Defendant is compelled by oath to uphold it.

## XVI.   INJURY

34.      Hence Plaintiff did demonstrate injury, uncontested by Defendant, resulting directly from a constitutional cause of action for which the sole remedy lies in the hands of the Defendant therefore the case must be allowed to proceed.