**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| John H. Page | ) | |
| 1077 30th Street NW | ) | |
| Apt. 411 | ) | |
| Washington, D.C. 20007 | ) | |
| Tel: 202 352 6952 | ) | |
| | ) | Case No. |
| Plaintiff | ) | 1:20-cv-00104 CRC |
| | ) | |
| v. | ) | |
| | ) | |
| Donald J. Trump, in His Official | ) | |
| Capacity as President of the United | ) | |
| States, Office of the President | ) | |
| 1600 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C. 20500 | ) | |
| | ) | |
| Defendant | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1

## Table of Contents

I.  BACKGROUND ........................................................................................................................ 4

II.  PRECIS ................................................................................................................................... 4

III.  CURRENT PLEADINGS.......................................................................................................... 6

IV.  REVIEW ................................................................................................................................ 7

V.  TENABILITY .......................................................................................................................... 9

VI.  CONGRESS' CLAUSE 17 POWERS ARE LIMITED ............................................................... 15

VII.  DEFENDANT HAS NO DISCRETION TO FORBID ............................................................... 16

VIII.  COLUMBIA STATE LAW NOT ABROGATED ...................................................................... 16

IX.  ADAMS & CASTAÑON WERE UNDER DISTRICT LAW ....................................................... 17

X.  DISMISSAL IS SOUGHT FOR AN UNCONSTITUTIONAL PURPOSE.................................... 19

XI.  CONCLUSION ...................................................................................................................... 20

ANNEX A - 1870 AND PRIOR CENSUS RESULTS...................................................................... 21

**Cases**

Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)................................................................ passim

Castañon v. United States, No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020).... passim

Evans v. Cornman, 398 U.S. 419 (1970) ............................................................................. 17, 18

Hepburn & Dundas v. Ellzey, 6 U.S. 2 Cranch 445 445 (1805).................................................. 13

James Stewart & Co. v. Sadrakula, 309 U.S. 94 (1940) ............................................................ 16

Kendall v. United States ex Rel. Stokes, 37 U.S. 524 (1838)................................................. 5, 16

Legal Tender Cases, 110 U.S. 421 (1884) ............................................................................ 5, 9

Raines v. Byrd, 521 U.S. 811, 819 (1997) ............................................................................. 11

Texas v. White, 74 U.S. 7 Wall. 700 700 (1868)...................................................................... 15

**Statutes**

28 U.S. Code § 1331 ......................................................................................................... 11

28 U.S. Code § 88 ............................................................................................................ 11

An Act Concerning the District of Columbia, 2 Stat. 103 (1801) ......................................... passim

Maryland Bill of Rights and Constitution 1776....................................................................... 7, 17

U.S. CONST. Amendment X.............................................................................................. 15

U.S. CONST. Amendment XIV .......................................................................................... 13

U.S. CONST. Art I, §2, cl. 3 .......................................................................................... 6, 13

U.S. CONST. Art. I, § 8, cl. 17......................................................................................... passim

U.S. CONST. Article IV ................................................................................................... 7

**Other Authorities**

United States Declaration of Independence of July 4, 1776....................................................... 19

# I.     BACKGROUND

1.      Plaintiff filed suit on January 15, 2020 and Defendant was duly served along with the US Attorney General and U.S. Attorney for DC.  Defendant filed a Motion to Dismiss on May 8, 2020 (the "Motion") after which Plaintiff filed an opposing motion and "PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" on May 18 (the "Opposition") to which Defendant responded on June 8 with "DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS" (Defendant's Reply") and Plaintiff's now files this "PLAINTIFF'S REPLY IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" ("This Reply").

# II.     PRECIS

2.      At issue is whether Plaintiff's injury in fact was the result of Defendant's breach of duty in submitting census returns omitting Columbia as a State.

3.      Conspicuous by its absence from ANY of Defendant's pleadings is section 1 of the 1801 Organic Act which a) preserves state law in Columbia, b) Defendant signed into law and c) is cited 7 times in the Complaint and 4 times in the Plaintiff's Opposition.  Defendant's omission is an artifice to trick the court into dismissing the case using prior opinions under District law as to justiciability, relief and standing for making the District into a state.  Plaintiff does not claim the District is a State and necessarily files under Columbia law because it is impossible for Congress to be a State Legislature for the purposes of apportionment.  Defendant has not raised a Rule 5.1 notice challenging the constitutionality of the 1801 Organic Act so section 1 of that Act preserving the Maryland Constitution as it was then is not in question.

4.      In This Reply Plaintiff responds to Defendant's statements and highlights two U.S. CONST. Art. I, § 8, cl. 17 cases[1] that show rights not delegated to Congress at cession remain in full force and effect and have not been abrogated.  In the instant case the State laws concerned were explicitly affirmed in section 1 of the 1801 Organic Act of cession.

5.      Plaintiff also adds a citation from *Legal Tender Cases, 110 U.S. 421 (1884)* which decided that the U.S. government has no inherent sovereignty and *Kendall v. United States* in which the Defendant's right to forbid or forgo actions mandated by his oath is entirely inadmissible.

6.      Plaintiff brings to his court's attention at section X evidence showing the incumbent of the Office of the President is opposing this case for political purposes, quoting him from the Monday before his Motion to Dismiss was filed.  At the least this is unbecoming, at worst it can be a criminal offense to use public office for personal or political gain or voter suppression.

7.      Defendant's latest arguments remain rooted in the premise that there is only one jurisdiction in Columbia and that is the U.S. CONST. Art. I, § 8, cl. 17 federal District of Columbia. From that premise Defendant asserts, because the District is not a State, Plaintiff: i) cannot sue Defendant for relief ii) is raising a non-justiciable political question, iii) lacks standing to bring his claim and iv) can only succeed by showing the U.S. Constitution is unconstitutional.  These defenses fail under Columbia law that Defendant preserved at cession.

8.      Plaintiff and Defendant agree the District of Columbia is not a State, see Defendant's Reply page 7 "*whatever one calls the territory covered by the District of Columbia, it is clear that the Constitution does not afford its residents the same voting privileges as residents of*

---

[1] Evans v. Cornman, 398 U.S. 419 (1970) and James Stewart & Co. v. Sadrakula, 309 U.S. 94 (1940)

5

*states*."   The parties disagree as to whether there remain (at least) two sovereigns in Columbia. Plaintiff argues in the Complaint in paras. 3 to 5 starting page 1 that the State sovereign i) endured Columbia's partition from Maryland ii) was not and could not have been extinguished by Columbia's cession to Congress and iii) retains rights of apportionment in Congress because these were not delegated to Congress under U.S. CONST. Art. I, § 8, cl. 17 and SCOTUS affirmed "*The impossibility of treating Congress as the [State] legislature under that [District] clause is manifest*" in Adams v. Clinton see Complaint footnote 2 page 4.

9.      That a person can be both a resident of a District and resident of a State is indisputable.  Defendant offers no precedent why this should not be the case in Columbia.  Since this case is de novo (see Complaint footnote 11 page 9) and given defendant's obduracy, Plaintiff offers further cases in This Reply where SCOTUS has agreed U.S. CONST. Art. I, § 8, cl. 17 does not cancel state representation rights unless they are expressly forbidden under the terms of cession.  As we know, section 1 of the 1801 Organic Act which Defendant signed into law, is cited 7 (seven) times in the Complaint and 4 (four) times in the Opposition to Motion to Dismiss and 0 (zero) times in Defendant's pleadings expressly perpetuates state law in Columbia.  The court must conclude that Defendant cannot overcome the Plaintiff's assertion in para. 4 of the Complaint:

> "In Columbia, as everywhere else in the Union, all sovereign laws are under State jurisdiction except where powers are enumerated to Congress."

### III.    CURRENT PLEADINGS

10.     Defendant's Motion and Defendant's Reply both seek to overturn the decision in Adams v. Clinton by ascribing to Congress the powers of a State Legislature.  There is no other interpretation of Defendant's pleadings; Defendant states numerous times that granting rights of representation is a political decision e.g. "*Plaintiff also presents a nonjusticiable political question*

*because he seeks relief that would require action by the political branches*." See Defendant's Reply at page 7.

11.     Yet Defendant has offered no theory as to how Columbia's U.S. CONST. Art I, §2, cl. 3 rights of apportionment, which can only be exercised by a State Legislature, could have been extinguished in the first place let alone transferred to Congress under the U.S. CONST.  It is thus Defendant's position that holds the U.S. Constitution is unconstitutional, not the Plaintiff's. Defendant's theory requires that Congress' powers in Columbia are unlimited and the courts have soundly rejected this including in Adams v. Clinton and Castañon v. United States.  Clause 17 limits Congress' powers to the District jurisdiction and Defendant has produced not a single case that makes Congress Columbia's absolute sovereign.  Plaintiff merely seeks relief based on Columbia's State Law to the extent not succeeded by the U.S. Constitution or District Law under Clause 17.

12.      Defendant asserts that the District is not a State and Plaintiff agrees.  Defendant equivocates about the term "territory" asserts this "not a state" conclusion also applies to Columbia.  Plaintiff continues to disagree; U.S. CONST. Art. I, § 8, cl. 17 contains no provision that Columbia is "not a state" (Complaint para 34 page 12) and neither does the U.S. CONST. anywhere else provide for making a part of the Union "not a state" or "not part of a state" other than through U.S. CONST. Article IV which is not the case here (Complaint para. 18 page 5). There is simply no mechanism to strip State representation rights in the Union once admitted.

## IV.     REVIEW

13.     It is clear that the Defendant is arguing a different set of facts than Plaintiff and uses his own facts in the standard of review for dismissal due to lack of standing and justiciability. This is not contemplated by the FRCP which mandates acceptance of all Plaintiff's facts unless

proven false.   Defendant's Motion and Defendant's Reply pretend section 1 of the 1801 Organic Act doesn't exist and base their dismissal arguments on District law alone.   However, the Complaint is made under Columbia residency and state law, not District residency and its non-state law.

14.     Population.   For the avoidance of doubt about the facts of the census, Plaintiff includes at Annex A hereto the USA population statistics from the 1870 census which includes all prior census years (including 1860 referenced in para 3 of page 1 of the Complaint and para 26 of page 18 of Plaintiff's Opposition to Defendant's Motion to Dismiss).   This proves that Columbia's population was 50% bigger than the State of Oregon in 1860 and that the Complaint is factually accurate.

15.     By introducing 'alternative facts' and ignoring what is actually claimed, Defendant's Reply tries to introduce his own merits arguments through the backdoor and to regurgitate arguments about standing and justiciability etc. based on previous cases trying to make the District of Columbia a State (sections II.B, IV and V of Defendant's Reply).   Yet Defendant asked the court to delay consideration of Plaintiff's Motion for Summary judgment which is when Defendant is first allowed to inject alternative facts.   Defendant's tactics look like an abuse of process.

16.     Defendant continues to make tautological (and thus vacuous) arguments that because the District is not a State, and because of Congress' exclusive legislative powers in the District over any matter whatsoever, that Congress' powers are unlimited.   Plaintiff has shown this is decidedly not the case and, in considering Defendant's Motion to Dismiss, one must conclude that while Congress has exclusive District powers they do not make it Columbia's absolute monarch.   Defendant's citations from Adams v. Clinton and, Castañon v. United States all relate

8

to the District of Columbia jurisdiction and law and the same outcome cannot be presumed when considering Columbia's state law and it's undelegated rights.

17.     With regard to justiciability and relief, Plaintiff asks the court to consider whether, if the Defendant had failed to include the State of Maryland on a census return, thereby frustrating Maryland's State rights to apportionment of representation in Congress and causing the same injury as in the instant case, whether Maryland could sue in this Federal court to obtain an order forcing the Defendant to comply with his oath and restore representation by submitting a corrected census return to Congress.  Of course it could; the Constitution is law the President must faithfully execute and the President does not have the discretion to grant or to withhold statehood in defiance of the Constitution or an Act of Congress.   Submitting an accurate census is Defendant's constitutional duty reinforced by statute; not a discretionary act and not political decision.

## V.     TENABILITY

18.     Defendant's Reply puts forth several red herrings discussed below beginning at page 4:

> "Rather, Plaintiff simply relies again on the untenable statement that the "'State of Columbia' has "undelegated State rights.""

Plaintiff has already shown in his Opposition that Columbia had State law on its partition from Maryland (viz. Congress' Acts of 1790 and the 1801 Organic Act regarding the establishment of the District) and that the opinions in Adams v. Clinton and Castañon v. United States prove respectively a) the impossibility of Congress being a State Legislature (Opposition para 3 page 5) and b) that Congress powers are limited by the remainder of the U.S. Constitution (Opposition Section X page 18).

Also, Congress cannot through any act have repealed the will of sovereign powers; this was decided in *Legal Tender Cases, 110 U.S. 421 (1884): "...there is no such thing as a power of inherent sovereignty in the government of the United States. It is a government of delegated powers, supreme within its prescribed sphere but powerless outside of it. In this country, sovereignty resides in the people, and Congress can exercise no power which they have not, by their Constitution, entrusted to it;"* Defendant seeks to overturn this principle; Congress is not entrusted to be Columbia's State Legislature for the purposes of apportionment under U.S. CONST. Art. I, § 8, cl. 17 and has and had no inherent sovereignty to extinguish undelegated State rights.

19.     The Defendant's Reply wastes the court's time with the following straw man argument based on the false premise that Columbia comprises only a District:

> As Defendant has already noted, Plaintiff relies on an untenable argument: the territory constituting the District of Columbia is and has always been a state (the above-referenced "State of Columbia").  (page 4 of Defendant's Reply)

Defendant neither provides a citation nor elucidates.  He does not explain why in other parts of the Union people can be both residents of states and districts but not in Columbia, even if the State rights in Columbia are limited only to apportionment of representation in Congress.

20.     Defendant's Reply (middle of page 4) claims that because the District itself is not a State its residents should not be considered state residents:

> "Plaintiff cannot state a claim for relief because the Constitution already addresses this argument, providing that the District is not a State (and thus its residents should not be considered state residents); Plaintiff cannot state a claim because, if he were correct, the Constitution would be unconstitutional"

First, the claim in parentheses is made without support.   The only sense in which it could be considered true is solely under District of Columbia law for matters where it has been decided that

State powers were delegated to Congress under U.S. CONST. Art. I, § 8, cl. 17.  Plaintiff provided a helpful example of this in his Opposition to footnote 3 page 7 which Defendant twisted to claim that the Plaintiff is confused.  He is not, the District of Columbia State Board of Education really does exist and has been deemed a State power delegated to Congress in the clause 17 District.  Plaintiff is not suing to change this.

Defendant's Motion to Dismiss and Defendant's Reply both assert that the District was made not a state or not part of a state under the U.S. Constitution and accuses Plaintiff of taking the position that the U.S. Constitution is unconstitutional.   This is an incorrect conclusion for false premises.  The Plaintiff asserts that his rights to apportionment of representation do not run through the District but run through Columbia's State (Complaint at page 7, paras. 22 and 23).  The State and District are jurisdictionally distinct the same as everywhere else in the Union.

Defendant relies in part on the Adams v. Clinton opinion as does the plaintiff.  That opinion makes some statements that appear to be internally inconsistent and potentially unconstitutional if read without recognizing it was only examining legal theories under District law.  Plaintiff already explained these potential Adams inconsistencies in the Complaint section K page 9 and they do not impact this case.  Defendant's theory that the Sovereign people's right to apportionment of representation as a State has been extinguished is both unconstitutional and false.

21.     Defendant cites *Raines v. Byrd*, 521 U.S. 811, 819 (1997) which is about an unconstitutional act of Congress but this is not applicable here; Plaintiff seeks redress for a failure of the Office of President and holds that the Acts of Congress involved are all constitutional.

22.     Defendant confuses District of Columbia law with the jurisdiction of a District Court saying at page 10 of Defendant's Reply:

> "In response, Plaintiff curiously argues that Defendant's arguments are misplaced because they rely on "precedents that are only relevant under District

11

law[.]" Pl.'s Opp. ¶ 24. Plaintiff is mistaken, for anyone to bring an action in this Court, he or she must meet "the irreducible constitutional minimum of standing." "

The District Court of the District of Columbia is empowered by 28 U.S. Code § 88 and has original jurisdiction over Federal Questions under 28 U.S. Code § 1331 and as also stated in para. 10 of the Complaint.  There are three bodies of law in this case, i) the U.S. Constitution and implementing statutes, ii) District law passed by Congress pursuant to Clause 17 and iii) State law to the extent not succeeded by District law or the Constitution.  It would be preclusory of the court to decide that Plaintiff is unlikely to win under unexamined State law which is quoted verbatim in the Complaint.

23.    Defendant's Reply makes a strange and false statement at section V on page 7:

> "Indeed, none of the political branches considers the territory that the District covers to be a state. Rather, Plaintiff is asking the Court to direct the political branches to consider this territory to be a state for the purposes of representation."

Plaintiff is not asking for the District to be a State and the Defendant has already been directed by the "political branches" through the 1801 Organic Act of Congress that Columbia has the state law of Maryland at the time of cession and that law provides for Columbia's State Legislature and Members of Congress.  Plaintiff is asking this court to order the Defendant to fulfil his oath and follow the law.

24.    Defendant's Reply makes an unsupported statement at section B on page 7

> "There is no reason to conclude that this is any different if one calls the District the "State of Columbia" rather than the "District of Columbia." It is the same territory and the Constitution provided that its residents would not receive the precise relief Plaintiff seeks.
> To conclude otherwise would raise a host of problems and require courts to decide which constitutional provisions should take precedence over others."

This court should ask where "*the Constitution provided that its residents would not receive the precise relief Plaintiff seeks*" as claimed by the Defendant.  It is not to be found.  The Constitution does

provide that the seat of the United State Government is in a District controlled by Congress.  That a District and State jurisdiction can coexist over the same piece of land is not a novelty.  The only novelty is that in Columbia District law takes precedence over State law.  It is notable Defendant claims a "host of problems" requiring court decisions but provides not a single example – because there are none.  Plaintiff has extensively researched this topic going all the way back to 1801 and has not come up with even one case[2] that would have a different result, largely because the District clause provides for power over "all matters whatsoever".  Defendant, meanwhile, defies the affirmed Adams v. Clinton opinion which decided it is impossible for Congress to be Columbia's State Legislature.

25.     On page 8 of Defendant's Reply he seems to have forgotten that ALL Plaintiff's pleadings claim that State law survives ONLY to the extent not succeeded by the U.S. Constitution or District law.  Defendant's patently false claim is emphasized below:

> In his Opposition, Plaintiff responds by baldly alleging that "Defendant has failed to prove that Plaintiff's claims are based on the U.S. Constitution being unconstitutional." Pl.'s Opp. at 18. That conclusory statement aside, it is inescapable that **in order to grant the requested relief, the Court would be forced to conclude that the territory of the District (and its residents) should receive the same rights as residents of states.** As that is squarely foreclosed by the Constitution for the reasons discussed in more detail above and in Defendant's Motion, the Court would be required to conclude that portions of the Constitution are unconstitutional.

26.     The Defendant's Reply proclaims at section III page 8 that "*Plaintiff's reliance on the Equal Protection Clause Is Doomed*" and cites Adams v. Clinton.  Defendant tries to make the absurd self-fulfilling argument that because Plaintiff has been harmed by not being represented as a resident of a State under U.S. CONST. Art I, § 2 cl. 3 that Plaintiff cannot claim equal protection

---

[2] Not even in the diversity cases like Hepburn & Dundas v. Ellzey, 6 U.S. 2 Cranch 445 445 (1805).  The subject of the suit was a District matter so is not disturbed by a vestigial State of Columbia that has only rights of representation.

under U.S. CONST. Amendment XIV.  Plaintiff, rather, at para 37 on page 14 of the Complaint, says that with regard to apportionment there should be equal protection so he is NOT disenfranchised. Adams v. Clinton is not relevant here because it did not consider Columbia State law rights and Defendant's assertion that Plaintiff "*freely admits that he has not "been intentionally treated differently from others similarly situated[.]*" is false; Columbia retains state rights of apportionment and Plaintiff is a entitled to benefit thereunder as in any other part of the Union with state's rights of apportionment. Because Columbia also contains the seat of U.S. Government, Plaintiff does not claim that he is similarly situated to residents of other states regarding District law; only with respect to equal protection of representation.

27.     Defendant's Reply says:

> "But Plaintiff skips the antecedent question—is the District's territory a state for the purposes of the census? If not, there is no "purely mechanical" function. Rather, as discussed above and in Defendant's Motion, it is that antecedent question, which falls within the political question doctrine and which would require action beyond this Court's jurisdiction. *See* Def.'s Mot. at 14-16"

The court does not need to ask such a question because it is not antecedent.  If it were an antecedent question it would be disputing Adams v. Clinton (that it is impossible for Congress to be the District's State Legislature for the purposes of apportionment) in which case the question is moot. Plaintiff is asserting that Columbia is a State for the purposes of the census and the Constitution and resulting statutes require Defendant by oath to follow the law so the mechanics of apportionment can be executed.  Defendant has provided no reason for the State of Columbia not to be shown on the census.

28.     In summary under this heading, Defendant's pleading doesn't even mention section 1 of the 1801 Organic Act, let alone argue against it.  The incumbent President is ignoring and

disobeying Congress, hoping the court will listen only to arguments made under District law so that he personally and his political party benefit (see also section X below).

## VI.   CONGRESS' CLAUSE 17 POWERS ARE LIMITED

29.   Defendant fails to explain how exercise of Columbia's rights to apportionment, rights not enumerated to Congress, would damage Defendant.  This matter is clearly outside District law because the District is not a State.  Indeed, the Office of the President and the United States Government would be stronger because it will be interacting with the members of Congress apportioned under constitutional law fulfilling the "consent of the governed"[3] covenant in the Declaration of Independence and one of the fundamental binding principles of the Republic and non-secession.

30.   Defendant's Reply selectively quotes Castañon v. United States which was brought and tried only under District law.  The real threshold issue is what are the limits of Congress' powers in the Columbia.   Per Castañon, the guardrail is that Congress should not do unconstitutional acts:

> """The Congress of the United States, being empowered by the Constitution "to exercise exclusive legislation in all cases whatsoever" over the seat of the national government, has the entire control over the District of Columbia for every purpose of government -- national or local. It may exercise within the District all legislative powers that the legislature of a state might exercise within the state, and may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit **so long as it does not contravene any provision of the Constitution of the United States**. *Kendall v. United States,* (1838), 12 Pet. 524, 37 U. S. 619; *Mattingly v. District of Columbia* (1878), 97 U. S. 687, 97 U. S. 690; *Gibbons v. District of Columbia* (1886), 116 U. S. 404, 116 U. S. 407."

---

[3] Texas v. White, 74 U.S. 7 Wall. 700 700 (1868)

Section 1 of the 1801 Organic Act preserved that Act's constitutionality by not extinguishing sovereign law reserved to Columbia and its people under U.S. CONST. Amendment X.  The Defendant is defying that law and causing ongoing injury.  The decision in Adams v. Clinton makes it categorically impossible that Congress holds State Legislature powers to select Columbia's representatives to Congress, the latter being governed by Columbia law.

## VII.    DEFENDANT HAS NO DISCRETION TO FORBID

**31.**    This court is being asked to rule whether decennial census omission is constitutional or not, which includes whether Defendant has the right to stay inclusion of a state.

This has already been considered in *Kendall v. United States,* (1838) (emphasis added):

> "To contend that the obligations imposed on the President to see the laws faithfully executed **implies a power to forbid their execution** is a novel construction of the Constitution, and is entirely inadmissible." and
> "At the date of the act of Congress establishing the government of the District of Columbia, the common law of England was in force in Maryland, and of course remained and continued in force in the part of the District ceded by Maryland to the United States."[4]

## VIII.   COLUMBIA STATE LAW NOT ABROGATED

32.    State law before cession survives to the extent it has not been superseded and Congress alone has no enumerated power to make a state not part of a state.  This applies in all places where exclusive legislative powers exist under U.S. CONST. Art. I, § 8, cl. 17 such as forts and the like, see James Stewart & Co. v. Sadrakula, 309 U.S. 94 (1940) which teaches:

> "It is now settled that the jurisdiction acquired from a state by the United States, whether by consent to the purchase or by cession, may be qualified in accordance with agreements reached by the respective governments. The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary, its language has long been

---

[4] This is because Maryland's Bill of Rights and Constitution adopted English law, which Congress preserved under section 1 of the 1801 Organic Act of cession of Columbia.  There was no other declaration as to adoption of English law than this.

interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred."

## IX.   ADAMS & CASTAÑON WERE UNDER DISTRICT LAW

33.    In Section XIV page 17 of his Memorandum in Support of Opposition to Defendant's Motion to Dismiss, Plaintiff clarifies that his claims are under State law:

> "Plaintiff brings this Federal Court action under Columbia State law as a resident of Columbia (see Complaint paras. 11 and 12 at page 3) so his U.S. CONST. Art I, § 2 cl. 3 claims as to the right of apportionment of representation in Congress for Columbia must be judged under non-District State law as clearly stated on page 12 of the Complaint:

> "Plaintiff is only claiming State of Columbia's Constitution is in full force and effect to the extent it has not been succeeded by the U.S. Constitution or valid acts of Congress affecting all States or the District of Columbia in particular."

34.    Both Defendant and Plaintiff refer to Castañon v. United States, No. 18-cv-2545, 2020 WL 1189458 (D.D.C. Mar. 12, 2020).  In section X on page 13 of his Opposition, Plaintiff cites extensively from Castañon which ruled Congress' power is not unlimited.   Ultimately, Castañon failed because it complained under District law and the District is not a State, viz. at page 9 thereof:

> "Accordingly, unlike the plaintiffs in *Adams*, Plaintiffs here do not claim they should be treated as residents of a State within the meaning of Article I, Section 2; to the contrary, their claim is that notwithstanding they are not residents of a State"

but the instant case is under unabrogatable Columbia State law established by the sovereign people of Columbia not succeeded by Federal or District law.  Consequently the Supreme Court's decision in Evans v. Cornman, 398 U.S. 419 (1970) which is a U.S. CONST. Art. I, § 8, cl. 17 case also applies in this case:

> "Residents on grounds of the National Institutes of Health are treated by the State of Maryland, in which that federal enclave is located, as state residents to such an extent that it violates the Equal Protection Clause of the Fourteenth Amendment to deny them the right to vote in that State. Pp. 398 U. S. 420-426."

35.     Did Congress accept in the 1801 Organic Act cession that the laws of state would continue? Yes, they explicitly did in section 1 of that Act as cited numerous times in the Complaint and oppositions to the Defendant:

> "..the laws of the state of Maryland, as they now exist, shall be and continue in force in that part of the said district, which was ceded by that state to the United States, and by them accepted as aforesaid."

36.     As pointed out in the Complaint, section K page 9 including footnote 11, Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) was also not judged under state law so suffered from the same issue as Castañon.  Furthermore, while Adams v. Clinton points to the U.S. Constitution as the source of plaintiff's injuries under the two theories examined in that case, those are only injuries caused by the U.S. Constitution under District law.  The opinion Adams v. Clinton did not consider and did not make any findings or conclusions under Columbia state law.

37.     State elections are not currently held in the Columbia.  Plaintiff approached the Director of the District of Columbia Board of Elections ("DCBOE"), an independent agency of the District government, requesting them to run elections as mandated by unabrogated State law in Columbia.  DCBOE's response was that the District Code did not provide it authority to hold such elections.  This is a further example of how Defendant's unfaithfulness to the oath of office is damaging Plaintiff and fellow residents who are left with the task of organizing these elections with no financial resources because all tax revenues in Columbia go to Congress for allocation back to the District.  In Evans v. Cornman, for example, electoral costs were met from Maryland taxes but in the instant case no similar financial resources are available.   Plaintiff is not asking for

18

monetary damages in this case but wishes to highlight additional consequences of Defendant's failure to follow the law.

## X.      DISMISSAL IS SOUGHT FOR AN UNCONSTITUTIONAL PURPOSE

38.      Defendant pleads to the court that apportionment of representation in Congress for the residents of Columbia is only justiciable through the political process.  Yet we see the President stating intent to ignore the law for his own political ends three days before the Motion to Dismiss was filed:

> "DC will never be a state," Trump told The [New York] Post on Monday during an exclusive interview in the Oval Office. "You mean District of Columbia, a state? Why? So we can have two more Democratic — Democrat senators and five more congressmen? No thank you. That'll never happen."
> By Steven Nelson and Ebony Bowden
> May 5, 2020 | 1:37pm |

39.      The United States Declaration of Independence of July 4, 1776 (as opposed to the Maryland Declaration of Independence published July 6, 1776) says, "*Governments are instituted among Men, deriving their just powers from the consent of the governed.*"  Does consent to the U.S. Constitution mean consent to the misuse of Federal power?  Of course not, neither the State of Maryland nor Columbia gave their consent to having the President withhold the powers of State that do not adhere to the federal government under Clause 17.   Again, as affirmed per curiam in Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000), all of which is laid out in the Complaint page 4 footnote 2 unopposed by Defendant:

> As originally provided under Article I, section 3, the Senate was to be "composed of two Senators from each State," chosen not "by the People of the several States," as in the case of the House, but rather "*by the Legislature thereof.*" U.S. CONST. art. I, ₃ 3, cl. 1 (emphasis added). **The impossibility of treating Congress as the legislature under that clause is manifest**

19

**40.**     Plaintiff argues that Defendant's Motion to Dismiss, given the above and that it is based on alternative facts (see para. 15 above), is brought in bad faith and should be denied forthwith.


## XI.     CONCLUSION

41.     For all the above reasons and those previously set forth, Plaintiff argues Defendant's Motion to Dismiss should be denied.

John H. Page (pro se)
1077 30th Street NW, Apt 411
Washington, D.C. 20007
Telephone: 202-352 6952
john.h.page@gmail.com

June 15, 2020

# ANNEX A - 1870 and PRIOR CENSUS RESULTS

## POPULATION BY STATES AND TERRITORIES—1790–1870.

### TABLE I.—THE UNITED STATES.

| STATES AND TERRITORIES. | 1870 | | 1860 | | 1850 | | 1840 | | 1830 | | 1820 | | 1810 | | 1800 | | 1790 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total of the United States... | | 38,558,371 | | 31,443,321 | | 23,191,876 | | 17,069,453 | | 12,866,020 | | 9,633,822 | | 7,239,881 | | 5,308,483 | | 3,929,214 |
| Variances from } Amount... | | | | | | | | | | | | | | | | | | |
| former official } Details in | | | | | | | | | | | | +254 Arit., Tenn., and Vt. | | −22 Va. | | | (6) + 3,041 N. Y. | | −112 Del. and Vt. |
| totals. } Table II. | | | | | | | | | | | | | | | | | | |
| Total of the States..... | | 38,115,641 | | 31,183,744 | | 23,067,262 | | 17,019,641 | | 12,820,868 | | 9,600,783 | | 7,215,058 | | 5,294,390 | | 3,929,214 |
| Alabama..................... | 16 | 996,992 | 13 | 964,201 | 18 | 771,623 | 12 | 590,756 | 15 | 309,527 | 19 | 127,901 | | | | | | |
| Arkansas.................... | 26 | 484,471 | 25 | 435,450 | 26 | 209,897 | 25 | 97,574 | 27 | 30,388 | 25 | 14,255 | | | | | | |
| California.................. | 24 | 560,247 | 26 | 379,994 | 29 | 92,597 | | | | | | | | | | | | |
| Connecticut................ | 25 | 537,454 | 24 | 460,147 | 21 | 370,792 | 20 | 309,978 | 16 | 297,675 | 14 | 275,148 | 9 | 261,942 | 8 | 251,002 | 8 | 237,946 |
| Delaware.................... | 34 | 125,015 | 33 | 112,216 | 30 | 91,532 | 30 | 78,085 | 24 | 76,748 | 22 | 72,749 | 19 | 72,674 | 17 | 64,273 | 16 | 59,096 |
| Florida..................... | 31 | 187,748 | 31 | 140,424 | 31 | 87,445 | 27 | 54,477 | 23 | 34,730 | | | | | | | | |
| Georgia..................... | 12 | 1,184,109 | 11 | 1,057,286 | 9 | 906,185 | 9 | 691,392 | 10 | 516,823 | 11 | 340,985 | 11 | 252,433 | 12 | 162,686 | 13 | 82,548 |
| Illinois.................... | 4 | 2,539,891 | 4 | 1,711,951 | 11 | 851,470 | 14 | 476,183 | 20 | 157,445 | 24 | 55,162 | 23 | 12,282 | | | | |
| Indiana..................... | 6 | 1,680,637 | 6 | 1,350,428 | 7 | 988,416 | 10 | 685,866 | 13 | 343,031 | 18 | 147,178 | 21 | 24,520 | 20 | 5,641 | | |
| Iowa........................ | 11 | 1,194,020 | 20 | 674,913 | 27 | 192,214 | 28 | 43,112 | | | | | | | | | | |
| Kansas...................... | 29 | 364,399 | 33 | 107,206 | | | | | | | | | | | | | | |
| Kentucky.................... | 8 | 1,321,011 | 9 | 1,155,684 | 8 | 982,405 | 6 | 779,828 | 6 | 687,917 | 6 | 564,135 | 7 | 406,511 | 9 | 220,955 | 14 | 73,677 |
| Louisiana................... | 21 | 726,915 | 17 | 708,002 | 18 | 517,762 | 19 | 352,411 | 19 | 215,739 | 17 | 152,923 | 18 | 76,556 | | | | |
| Maine....................... | 23 | 626,915 | 22 | 628,279 | 16 | 583,169 | 13 | 501,793 | 12 | 399,455 | 12 | 298,269 | 14 | 228,705 | 14 | 151,719 | 11 | 96,540 |
| Maryland.................... | 20 | 780,894 | 19 | 687,049 | 17 | 583,034 | 15 | 470,019 | 11 | 447,040 | 10 | 407,350 | 6 | 380,546 | 7 | 341,548 | 6 | 319,728 |
| Massachusetts............... | 7 | 1,457,351 | 7 | 1,231,066 | 6 | 994,514 | 8 | 737,699 | 8 | 610,408 | 7 | 523,159 | 5 | 472,040 | 5 | 422,845 | 4 | 378,787 |
| Michigan.................... | 13 | 1,184,059 | 16 | 749,113 | 20 | 397,654 | 23 | 212,267 | 26 | 31,639 | 26 | 8,765 | 24 | 4,762 | | | | |
| Minnesota................... | 28 | 439,706 | 30 | 172,023 | 33 | 6,077 | | | | | | | | | | | | |
| Mississippi................. | 18 | 827,922 | 14 | 791,305 | 15 | 606,526 | 17 | 375,651 | 22 | 136,621 | 21 | 75,448 | 20 | 40,352 | 19 | 8,850 | | |
| Missouri.................... | 5 | 1,721,295 | 8 | 1,182,012 | 13 | 682,044 | 16 | 383,702 | 21 | 140,455 | 23 | 66,557 | 22 | 20,845 | | | | |
| Nebraska.................... | 33 | 122,993 | 35 | 28,841 | | | | | | | | | | | | | | |
| Nevada...................... | 37 | 42,491 | 36 | 6,857 | | | | | | | | | | | | | | |
| New Hampshire............... | 31 | 318,300 | 27 | 326,073 | 22 | 317,976 | 22 | 284,574 | 18 | 269,328 | 13 | 244,022 | 16 | 214,460 | 11 | 183,858 | 10 | 141,885 |
| New Jersey.................. | 17 | 906,096 | 21 | 672,035 | 19 | 489,555 | 18 | 373,306 | 14 | 320,823 | 13 | 277,426 | 12 | 245,562 | 10 | 211,149 | 9 | 184,139 |
| New York.................... | 1 | 4,382,759 | 1 | 3,880,735 | 1 | 3,097,394 | 1 | 2,428,921 | 1 | 1,918,608 | 1 | 1,372,812 | 2 | 959,049 | 3 | 589,051 | 5 | 340,120 |
| North Carolina.............. | 14 | 1,071,361 | 12 | 992,622 | 10 | 869,039 | 7 | 753,419 | 5 | 737,987 | 4 | 638,829 | 4 | 555,500 | 4 | 478,103 | 3 | 393,751 |
| Ohio........................ | 3 | 2,665,260 | 3 | 2,339,511 | 3 | 1,980,329 | 3 | 1,519,467 | 4 | 937,903 | 5 | 581,295 | 13 | 230,760 | 18 | 45,365 | | |
| Oregon...................... | 26 | 90,923 | 34 | 52,465 | 32 | 13,294 | | | | | | | | | | | | |
| Pennsylvania................ | 2 | 3,521,951 | 2 | 2,906,215 | 2 | 2,311,786 | 2 | 1,724,033 | 2 | 1,348,233 | 3 | 1,047,507 | 3 | 810,091 | 2 | 602,365 | 2 | 434,373 |
| Rhode Island................ | 30 | 217,353 | 29 | 174,620 | 23 | 147,545 | 24 | 108,830 | 23 | 97,199 | 20 | 83,015 | 17 | 76,931 | 16 | 69,122 | 15 | 68,825 |
| South Carolina.............. | 22 | 705,606 | 18 | 703,708 | 14 | 668,507 | 11 | 594,398 | 9 | 581,185 | 8 | 502,741 | 6 | 415,115 | 6 | 345,591 | 7 | 249,073 |
| Tennessee................... | 9 | 1,258,520 | 10 | 1,109,801 | 5 | 1,002,717 | 5 | 829,210 | 7 | 681,904 | 9 | 422,771 | 10 | 261,727 | 15 | 105,602 | 17 | 35,691 |
| Texas....................... | 19 | 818,579 | 23 | 604,215 | 25 | 212,592 | | | | | | | | | | | | |
| Vermont..................... | 26 | 330,551 | 28 | 315,098 | 23 | 314,120 | 21 | 291,948 | 17 | 280,652 | 16 | 235,966 | 15 | 217,895 | 13 | 154,465 | 12 | 85,425 |
| Virginia.................... | 10 | 1,225,163 | 5 | 1,596,318 | 4 | 1,421,661 | 4 | 1,239,797 | 3 | 1,211,405 | 2 | 1,065,116 | 1 | 974,600 | 1 | 880,200 | 1 | 747,610 |
| West Virginia............... | 27 | 442,014 | | | | | | | | | | | | | | | | |
| Wisconsin................... | 15 | 1,054,670 | 15 | 775,881 | 24 | 305,391 | 29 | 30,945 | | | | | | | | | | |
| Total of the Territories... | | 442,730 | | 238,577 | | 124,614 | | 42,712 | | 39,834 | | 33,039 | | 24,023 | | 14,093 | | |
| Arizona..................... | 9 | 9,628 | | | | | | | | | | | | | | | | |
| Colorado.................... | 4 | 29,864 | 4 | 34,277 | | | | | | | | | | | | | | |
| Dakota...................... | 8 | 14,181 | 6 | 4,837 | | | | | | | | | | | | | | |
| District of Columbia....... | 1 | 131,700 | 2 | 75,080 | 2 | 51,687 | 1 | 43,712 | 1 | 39,834 | 1 | 33,039 | 1 | 24,023 | 1 | 14,093 | |
| Idaho....................... | 7 | 14,999 | | | | | | | | | | | | | | | | |
| Montana..................... | 6 | 20,595 | | | | | | | | | | | | | | | | |
| New Mexico.................. | 2 | 91,874 | 1 | 93,516 | 1 | 61,547 | | | | | | | | | | | | |
| Utah........................ | 3 | 86,786 | 3 | 40,273 | 3 | 11,380 | | | | | | | | | | | | |
| Washington.................. | 5 | 23,955 | 5 | 11,594 | | | | | | | | | | | | | | |
| Wyoming..................... | 10 | 9,118 | | | | | | | | | | | | | | | | |
| On public ships in service of the United States... | | | | | | | | 6,100 | | 5,318 | | | | | | | | |

Note.—The narrow column under each census year shows the order of the States and Territories when arranged according to magnitude of population in the aggregate or in each class.

(a) "All other persons, except Indians not taxed." In the form of Schedule I, transmitted by the Secretary of State to the marshals, and in the table of the official census of 1820, this heading was printed without a comma. Yet it was printed with a comma after the word "persons" in the schedule which was made a part of the census act of 1820, and the thirty-third interrogatory prescribed by the Secretary of State for the marshals contained no head of a family was: "How many other persons, EXCEPT INDIANS NOT TAXED?" This interrogatory follows the punctuation of the census act, and the care taken to emphasize the last clause by capital letters relieves the meaning of the interrogatory from doubt. A few Indians taxed were included in this census, as were also persons in the military and naval service of the United States, inmates of prisons, alms and poor houses, and generally such persons as maintain and keep locate in a family. The quantities marked with an asterisk (*), as well as all others in Tables I and II, which are interlined above another, are not included in the lower quantity, but the two are addition.

(b) To obtain the total population of the United States at the census of 1840, it is necessary to add to the printed total of the aggregate table 387, being the increase of the second enumeration of the county of Montgomery, Maryland, over the first enumeration.

(b) In the aggregate table of the census of 1860, the total of the State of Tennessee is printed 422,813 instead of 422,813, as given by the table of Tennessee in the same census. This error of the total column of the aggregate table having been corrected, the above variance applies.

(c) In the aggregate table of the census of 1860 the total of Kentucky is printed 220,955. The table for Kentucky in the same census has it 220,955; also the total of Pennsylvania is printed 347,879 instead of 347,593. These errors of the total column of the aggregate table having been corrected, the above variance applies. See note (d) page 4.